UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROSSINGBRIDGE ADVISORS, LLC<br>  Plaintiff<br>v.<br>CARGILL INTERNATIONAL TRADING PTE LTD.<br>  Defendant | Case 24-cv-9138 (RA)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff CrossingBridge Advisors, LLC ("CrossingBridge") as and for its first amended complaint against defendant Cargill International Trading Pte Ltd. ("CITPL") hereby alleges:

## NATURE OF ACTION

1. This is an action for breach of a Collateral Agency and Intercreditor Agreement dated May 11, 2023 ("Intercreditor Agreement").

## JURISDICTION AND VENUE

2. This Court has personal jurisdiction over CITPL, and venue in this Court is proper, under Intercreditor Agreement § 3.08.

## THE PARTIES

3. CrossingBridge is an SEC-registered investment advisor organized under Delaware law whose principal office is in Westchester.

4. CITPL is the Singaporean affiliate of Cargill, Inc., a multinational food-focused conglomerate headquartered in Minnesota.

## BACKGROUND

### I. TACORA'S SECURED DEBT

5. Tacora Resources, Inc. ("Tacora") is an iron ore mining and development company organized under the laws of Ontario, Canada, with a registered office in Toronto.

6. Tacora owns and operates the Scully Mine ("Scully"), an iron ore concentrate producer near Wabush, Newfoundland and Labrador, Canada.

7. Pursuant to an Offtake Agreement originally dated April 5, 2017 and restated November 11, 2018, Tacora sells 100% of the iron ore concentrate production at Scully to CITPL. Pursuant to an amendment dated March 2, 2020, the term of the Offtake Agreement was extended to a life of mine contract such that Tacora is required to sell and CITPL is required to buy all iron ore concentrate produced at Scully while it remains operational.

8. Since at least 2021, Tacora experienced strained liquidity which it addressed through several capital raises.

9. Tacora issued $175 million in Senior Secured Notes due 2026 pursuant to an indenture dated May 11, 2021.

10. Tacora issued an additional $50 million in Senior Secured Notes pursuant to a supplemental indenture dated February 16, 2022.

11. Computershare Trust Company, N.A. ("Computershare") was the Trustee and Notes Collateral Agent under the indenture documents.

12. On January 3, 2023, Tacora as seller and CITPL as buyer entered into an advance payment facility agreement ("APF Agreement") under which CITPL made advance payments under the Offtake Agreement to Tacora in the total principal amount of $30 million.

13. Tacora entered into a "Pari Passu Intercreditor Agreement" dated January 9, 2023 among Tacora, Computershare as "Authorized Representative of the Indenture Secured Parties" and CITPL as "Initial Additional Authorized Representative".

14. Pursuant to an amendment to the APF Agreement dated May 29, 2023, CITPL agreed to provide Tacora with a new facility whereby CITPL would make margin advances of up to $25 million to Tacora primarily to finance payments due to CITPL under the Offtake Agreement ("Margin Advances").

15. In or about May 2023, Tacora also engaged with an ad hoc group of Senior Secured Noteholders including CrossingBridge, to raise capital to support operations and provide a bridge in contemplation of an out-of-court restructuring or recapitalization transaction.

16. The capital raise was consummated via an amendment to the above-referenced indenture documents. Specifically, Tacora entered into: (a) an amended and restated base indenture dated May 11, 2023; (b) a first supplemental indenture, also dated May 11, 2023, governing the terms of the previously-issued Senior Secured Notes; and (c) a second supplemental indenture, also dated May 11, 2023, under which Tacora issued $27,521,634 million in Senior Priority Notes due 2023 (not later than 120 days after the issue date).

17. Pursuant to the May 11, 2023 indenture documents, Computershare is the Trustee and Notes Collateral Agent for both the Senior Secured and Senior Priority Notes.

18. CrossingBridge and/or funds managed by it hold $12,233,510 in principal amount (45%) of the Senior Priority Notes.

19. The Senior Priority Notes are secured by a lien on substantially all the real and personal property of Tacora and its subsidiaries.

20. In relation to issuance of the Senior Priority Notes, Tacora entered into the above-referenced Intercreditor Agreement among Tacora, Computershare as "Authorized Representative of the Indenture Secured Parties" and CITPL as "Authorized Representative for the Initial Additional Pari Passu Secured Parties and the Senior Priority Secured Parties under the Advance Payments Facility" ("Initial Additional Authorized Representative").

21. Pursuant to the Intercreditor Agreement, the parties agreed (§ 2.01) that if:

> [A]ny distribution is made in respect of any Shared Collateral in any Insolvency or Liquidation Proceeding of any Grantor … any such distribution or payment received by the Notes Collateral Agent, the Initial Additional Authorized Representative, any Senior Priority

3

>Secured Party or any Pari Passu Secured Party pursuant to any such Insolvency or Liquidation Proceeding … shall be applied …

first, to fees and expenses incurred by Computershare as Trustee and Notes Collateral Agent and CITPL as Initial Additional Authorized Representative; next "to the payment in full of all of the remaining Senior Priority Obligations", with "the amounts so applied to be distributed on a pari passu basis to each Series of Senior Priority Obligations"; and only then "to the payment in full of all remaining Pari Passu Obligations".

22. Senior Priority Obligations in turn are defined to include Senior Priority Notes and Margin Advances.

23. And Pari Passu Obligations are defined to include Senior Secured Notes and the initial advances under the APF Agreement.

24. As a result, the Margin Advances rank pari passu with the Senior Priority Notes, and the Senior Priority Notes rank senior to the Senior Secured Notes.

25. The parties further agreed (§ 2.03(b)) as follows:

>Each Authorized Representative, on behalf of itself and the relevant Secured Parties agrees that if it shall obtain possession of any Shared Collateral or shall realize any proceeds or payment in respect of any such Shared Collateral (other than from a distribution in accordance with the provisions of Section 2.01), pursuant to any Secured Document or by the exercise of any rights available to it under applicable Law or in any Insolvency or Liquidation Proceeding or through any other exercise of remedies … at any time prior to the Discharge of each of the Senior Priority Obligations, then it shall hold such Shared Collateral, proceeds or payment in trust for the other Secured Parties and promptly transfer such Shared Collateral, proceeds or payment, as the case may be, to the Authorized Representatives for the Senior Priority Secured Parties, to be distributed in accordance with the provisions of Section 2.01.

26. In its application for an initial order in CCAA Proceeding, Tacora described the ranking of its secured obligations as follows:

4

|  | CITPL | Senior Noteholders |
|---|---|---|
| First Ranking | $4,717,648 of Margin Advances | $27,521,634 of Senior Priority Notes |
| Second Ranking | $30,000,000 of initial advances under the Advance Payment Facility | $225,000,000 of Senior Secured Notes |
| Total | $34,717,648 | $261,802,884 |

27. In its Subscription Agreement (defined below), Tacora disclosed that the outstanding balance due under the "Margining Facility" (i.e. for Margin Advances) was around $6.2 million.

## II. THE REVERSE VESTING TRANSACTION

28. On October 10, 2023, Tacora commenced a Canadian insolvency proceeding under the Companies' Creditors Arrangements Act ("CCAA Proceeding").

29. On July 26, 2024, the Ontario Superior Court of Justice entered an Approval and Reverse Vesting Order dated July 26, 2024 approving a Subscription Agreement dated July 21, 2024 ("Subscription Agreement"), under which Tacora consummated a "reverse vesting" transaction under which, in a nutshell: (a) existing equity interests in Tacora were cancelled, with investors including Cargill, Inc. (together, the "Investors") subscribing to new equity interests; and (b) specified unwanted assets and liabilities (including Senior Priority and Senior Secured Notes) were transferred to a newly created entity "ResidualCo" which was then made a CCAA debtor and liquidated, permitting Tacora to emerge from the CCAA Proceeding cleansed of said unwanted assets and liabilities.

30. Pursuant to Subscription Agreement § 2.3(a)(iii), the monitor on behalf of Tacora agreed to pay all "amounts owing under the Existing Cargill Margin Facility" i.e. the above-referenced approximately $6.2 million.

31. § 2.3(a) further states:

> The payment to Cargill of the amounts owing under the Existing Cargill Margin Facility are being made in consideration for Cargill entering into this Agreement and its agreements, compromises and obligations hereunder.

32. Pursuant to an amendment dated September 17, 2024, two days before the reverse vesting transaction closed, the parties to the Subscription Agreement, but not the monitor,[1] entered into an amendment which revised § 2.3(a) to define amounts owed under the Existing Cargill Margin Facility as the "Cargill Consideration Payment" and provide that such payment "shall be made to Cargill [defined as CITPL and Cargill, Inc.] pursuant to a discount provided under the Cargill Offtake Agreement in connection with the Transactions and this Agreement, and, for certainty, is not being made in repayment of the Existing Cargill Margin Facility."

33. The "Cargill Offtake Agreement" is defined as the new Offtake Agreement entered into contemporaneously with closing of the reverse vesting transaction whose terms are consistent with those set forth in an un-filed Restructuring Support Agreement.

34. Upon information and belief, based on the fact that the pre-CCAA Proceeding Offtake Agreement is with CITPL, the new Offtake Agreement is also with CITPL.

35. Under the Subscription Agreement's definition of "Cargill Pre-filing Payable", the parties agreed CITPL owed Tacora around $12.5 million under the Offtake Agreement.

36. Pursuant to Subscription Agreement § 7.2(c), that amount was set-off against the same amount stated to be owed by Tacora to CITPL under the APF Agreement.

---

[1] Pursuant to Subscription Agreement § 10.12, prior consent of the monitor is needed for any amendment. The recitals to the amendment state monitor prior approval was obtained, but it is not signed by the monitor, and CrossingBridge lacks knowledge as to whether the monitor actually approved the same.

37. On October 7, 2024, following the closing of the reverse vesting transactions under the Subscription Agreement, the Ontario Superior Court of Justice entered a CCAA Termination Order closing the CCAA Proceeding, on terms whereby Tacora emerged free of obligations under the Senior Priority and Senior Secured Notes.

## FIRST CAUSE OF ACTION
### Breach of Intercreditor Agreement

38. CrossingBridge repeats and realleges the allegations in ¶¶1-37 as if fully set forth herein.

39. The Intercreditor Agreement is a valid agreement, supported by valid consideration in the form of inter alia $27,521,634 in Senior Priority Notes issued contemporaneously with execution thereof.

40. Both (a) the payment to CITPL of the around $6.2 million owing under the Existing Cargill Margin Facility (defined as the "Cargill Consideration Payment" in the amendment) and (b) the setoff of the approximately $12.5 million Cargill Pre-Filing Payable against the same amount owing by Tacora to CITPL under the APF Agreement, violated the Intercreditor Agreement.

41. Pursuant to Intercreditor Agreement § 2.01 and § 2.03(b), CITPL was required to apply said amounts so that they are "distributed on a pari passu basis to each Series of Senior Priority Obligations."

42. CITPL did not do this, and instead retained the subject amounts for its own benefit, causing damages to CrossingBridge.

43. Instead of receiving around 45% of the amount that otherwise would have been paid to Senior Priority Noteholders pursuant to the Intercreditor Agreement, CrossingBridge received nothing.

44.     With respect to the Cargill Consideration Payment, that the pre-closing amendment characterizes it as taking the form of "a discount provided under the Cargill Offtake Agreement" does not negate this contractual obligation. Putting aside that the amendment was entered into for the apparent purpose of thwarting intercreditor obligations, the amendment characterizes the Cargill Consideration Payment as a "Payment to Cargill" and the referenced discount is itself a payment/distribution triggering application of the Intercreditor Agreement.

45.     CrossingBridge is entitled to enforce the Intercreditor Agreement, because it is a Senior Priority Secured Party or investment manager of a Senior Priority Secured Party and thus an intended beneficiary of same.

WHEREFORE, judgment should be entered in favor of CrossingBridge and against CITPL in an amount to be determined at trial, together with prejudgment interest and costs, and such other and further relief as the Court deems just and proper.

Dated:  New York, NY
        December 30, 2024

Amini LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Plaintiff