# EXHIBIT A

*Execution Version*

# COLLATERAL AGENCY AND INTERCREDITOR AGREEMENT

dated as of May 11, 2023

among

## TACORA RESOURCES INC.,

## the other GRANTORS party hereto from time to time,

## COMPUTERSHARE TRUST COMPANY, N.A.,

in its capacity as
the Notes Collateral Agent, as the Authorized Representative for the Indenture
Secured Parties,

## CARGILL INTERNATIONAL TRADING PTE LTD.,

as the Initial Additional Authorized Representative,

and

each ADDITIONAL AUTHORIZED REPRESENTATIVE from time to time party hereto

# Table of Contents

**Page**

1.  Definitions ........................................................................................................................... 1

2.  Priorities and Agreements with respect to Shared Collateral ....................................... 8

3.  Miscellaneous .................................................................................................................. 12

4.  No Liability ...................................................................................................................... 17

COLLATERAL AGENCY AND INTERCREDITOR AGREEMENT (as amended or supplemented from time to time, this "**Agreement**") dated as of May 11, 2023, among TACORA RESOURCES INC., a corporation incorporated under the laws of the Province of Ontario, Canada (the "**Company**"), the other GRANTORS (as defined below) party hereto from time to time, COMPUTERSHARE TRUST COMPANY, N.A., as notes authorized agent (in such capacity, along with its successors and permitted assigns, the "**Notes Collateral Agent**"), as Authorized Representative for the Indenture Secured Parties under the Indenture (as defined below), CARGILL INTERNATIONAL TRADING PTE LTD., as the Authorized Representative for the Initial Additional Pari Passu Secured Parties and the Senior Priority Secured Parties under the Advance Payments Facility (as defined below) (in such capacities, along with its successors and permitted assigns, the "**Initial Additional Authorized Representative**"), and each Additional Authorized Representative from time to time party hereto, as the Authorized  Representative for any Secured Parties of any other Class.

In consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Authorized Representative, for itself and on behalf of its Related Secured Parties agree as follows:

# 1.    Definitions

### 1.01    Construction; Certain Defined Terms

(a)    The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "will" shall be construed to have the same meaning and effect as the word "shall". Unless the context requires otherwise, (i) any definition of or reference to any agreement, instrument, other document, statute or regulation herein shall be construed as referring to such agreement, instrument, other document, statute or regulation as from time to time amended, supplemented or otherwise modified, (ii) any reference herein to any Person shall be construed to include such Person's successors and assigns, but shall not be deemed to include the subsidiaries of such Person unless express reference is made to such subsidiaries, (iii) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (iv) all references herein to Articles, Sections and Annexes shall be construed to refer to Articles, Sections and Annexes of this Agreement, (v) unless otherwise expressly qualified herein, the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights and (vi) the term "or" is not exclusive.

(b)    References to an Authorized Representative acting on behalf of "the relevant" Secured Parties shall be to such Authorized Representative acting on behalf of each Series of Secured Parties for which it has been appointed as agent, trustee or representative.

(c)    As used in this Agreement, the following terms have the meanings specified below:

"**Additional Authorized Representative**" has the meaning assigned to such term in Section 3.15 of this Agreement.

"**Additional Pari Passu Documents**" means any agreement evidencing indebtedness permitted to be designated by the Pari Passu Documents as pari passu in right of payment with the Pari

Passu Obligations and junior in right of payment to the Senior Priority Obligations, including for certainty all of the Financing Documents (as defined in the Advance Payment Facility) to the extent relating to, securing or governing the Senior Secured Hedging Facility.

"**Additional Pari Passu Obligations**" means any principal, interest, penalties (if any), fees, premiums (if any), indemnifications, reimbursements, guarantees and other liabilities payable under and pursuant to the terms of any Additional Pari Passu Documents, in each case, whether now or hereafter existing, renewed or restructured, whether or not from time to time decreased or extinguished and later increased, created or incurred, whether or not arising on or after the commencement of an Insolvency or Liquidation Proceeding (including Post-Petition Interest) and whether or not allowed or allowable as a claim in any such proceeding, to the extent such obligations are permitted to be designated by the Pari Passu Documents as *pari passu* in right of payment with the Pari Passu Obligations and which in any event shall be junior in right of payment to the Senior Priority Obligations.

"**Additional Pari Passu Secured Parties**" means the holders of any Additional Pari Passu Obligations and any Authorized Representative with respect thereto.

"**Additional Priority Documents**" means any agreement evidencing indebtedness permitted to be designated by the Senior Priority Documents and the Pari Passu Documents as *pari passu* in right of payment with the Senior Priority Obligations and senior in right of payment to the Pari Passu Obligations.

"**Additional Priority Obligations**" means any principal, interest, penalties (if any), fees, premiums (if any), indemnifications, reimbursements, guarantees and other liabilities payable under and pursuant to the terms of any Additional Priority Documents, in each case, whether now or hereafter existing, renewed or restructured, whether or not from time to time decreased or extinguished and later increased, created or incurred, whether or not arising on or after the commencement of an Insolvency or Liquidation Proceeding (including Post-Petition Interest) and whether or not allowed or allowable as a claim in any such proceeding, to the extent such obligations are permitted to be designated by the Senior Priority Documents and the Pari Passu Documents as *pari passu* in right of payment with the Senior Priority Obligations and which in any event shall be senior in right of payment to the Pari Passu Obligations.

"**Additional Priority Secured Parties**" means the holders of any Additional Priority Obligations and any Authorized Representative with respect thereto.

"**Advance Payments Facility**" means that certain Advance Payments Facility Agreement, dated as of January 3, 2023, between the Company and Cargill International Trading Pte Ltd.

"**Affiliate**" means as to any Person, any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"**Agreement**" has the meaning assigned to such term in the introductory paragraph of this Agreement.

"**Authorized Representative**" means the Notes Collateral Agent, the Initial Additional Authorized Representative and each Additional Authorized Representative.

"**Bankruptcy Code**" means Title 11 of the United States Code, as amended.

"**Business Day**" means any day other than a Saturday, Sunday, or day on which commercial banks in the state of New York and the State where the Corporate Trust Office of the Notes Collateral Agent are authorized or required by Law to remain closed.

"**Class**", when used in reference to (a) any Pari Passu Obligations, refers to whether such Pari Passu Obligations are the Pari Passu Notes Obligations, the Initial Additional Pari Passu Obligations or the Additional Pari Passu Obligations of any Series, (b) any Senior Priority Obligations, refers to whether such Senior Priority Obligations are the Senior Priority Obligations described in clause (a) or (b) of the definition thereof or Additional Priority Obligations of any Series, (c) any Authorized Representative, refers to whether such Authorized Representative is the Notes Collateral Agent (either in its capacity for the Pari Passu Obligations or the Senior Priority Obligations, as the case may be), the Initial Additional Authorized Representative (either in its capacity for the Pari Passu Obligations or the Senior Priority Obligations, as the case may be) or the Additional Authorized Representative with respect to the Additional Pari Passu Obligations or Additional Priority Obligations of any Series and (d) any Secured Parties, refers to whether such Secured Parties are the Secured Parties in respect of the Senior Priority Obligations described in clause (a) or (b) of the definition thereof, the Secured Parties in respect of the Pari Passu Notes Obligations, the Initial Additional Pari Passu Secured Parties or the additional Secured Parties with respect to the Additional Pari Passu Obligations or Additional Priority Obligations of any Series.

"**Collateral**" means all assets and properties of the Company or any Grantor now or hereafter subject to Liens created pursuant to any Senior Priority Security Document or Pari Passu Security Documents to secure Senior Priority Obligations or Pari Passu Obligations.

"**Company**" has the meaning assigned to such term in the introductory paragraph hereof.

"**Controlling Pari Passu Secured Parties**" means, with respect to any Shared Collateral, the Pari Passu Secured Parties that at such time hold (or represent) more than 50% of the principal amount of the then outstanding Pari Passu Obligations secured by such Shared Collateral.

"**Controlling Senior Priority Secured Parties**" means, with respect to any Shared Collateral, the Senior Priority Secured Parties that at such time hold (or represent) more than 50% of the principal amount of the then outstanding Senior Priority Obligations secured by such Shared Collateral.

"**Debtor Relief Laws**" means the Bankruptcy Code, the Bankruptcy and Insolvency Act (Canada), the Companies' Creditors Arrangement Act (Canada), the Winding-Up and Restructuring Act (Canada) and any Canadian corporate statute where such statute is used to propose an arrangement involving the compromise of claims of creditors and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect.

"**Discharge**" means, with respect to any Shared Collateral and any Senior Priority Obligations or any Pari Passu Obligations, the date on which such Senior Priority Obligations or such Pari Passu Obligations, as applicable, are no longer secured by such Shared Collateral pursuant to the terms of the documentation governing such Senior Priority Obligations or such Pari Passu Obligations, as applicable.  The term "**Discharged**" shall have a corresponding meaning.

"**Discharge of Senior Priority Obligations**" means, with respect to any Shared Collateral, the Discharge of all Senior Priority Obligations with respect to such Shared Collateral; *provided that* the Discharge of Senior Priority Obligations shall not be deemed to have occurred in connection

with a Refinancing of such Senior Priority Obligations with the proceeds of other Senior Priority Obligations (subject to the limitations set forth in the then extant Secured Documents with respect to incurring such other Senior Priority Obligations) secured by such Shared Collateral and incurred under any Senior Priority Documents which have been designated in writing by the Company to the Notes Collateral Agent and each Authorized Representative as a "Senior Priority Document" for purposes of this Agreement.

"**Event of Default**" means an event of default or analogous term under a Senior Priority Document or Pari Passu Document, as applicable.

"**Grantors**" means the Company and each Subsidiary Guarantor from time to time that granted a security interest on its assets pursuant to one or more Security Documents.

"**Indenture**" means the Amended and Restated Base Indenture dated as of May 11, 2023, by and among the Company, as issuer, the guarantors from time to time party thereto, the Trustee and the Notes Collateral Agent, as supplemented by the First Supplemental Indenture dated May 11, 2023 and the Second Supplemental Indenture dated May 11, 2023, each by and among the Company, as issuer, the guarantors from time to time party thereto, the Trustee and the Notes Collateral Agent, and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time.

"**Indenture Secured Parties**" means the Persons holding Noteholder Claims, including the Notes Collateral Agent and the Trustee.

"**Initial Additional Authorized Representative**" has the meaning assigned to such term in the introductory paragraph hereof.

"**Initial Additional Pari Passu Documents**" means the Advance Payments Facility, the Financing Documents (as defined in the Advanced Payments Facility) (other than to the extent relating to, securing or governing any Senior Secured Hedging Facility) and all other instruments, agreements and other documents evidencing or governing any Initial Additional Pari Passu Obligations or providing any guarantee, Lien or other right in respect thereof, in each case, as amended, supplemented, restated, renewed, refunded, replaced, restructured, repaid, refinanced or otherwise modified, in whole or in part, from time to time.

"**Initial Additional Pari Passu Obligations**" means the "Obligations" as defined in the Advanced Payments Facility; provided that, if, after the date hereof, the Company increases the "Obligations" under the Advanced Payments Facility and such increased "Obligations" constitute the Senior Secured Hedging Facility permitted under the Indenture, then such increased "Obligations" shall constitute Senior Priority Obligations in accordance with the terms of this Agreement.

"**Initial Additional Pari Passu Secured Parties**" means the holders of any Initial Additional Pari Passu Obligations.

"**Initial Additional Pari Passu Security Documents**" means the "Security Documents" as defined in the AdvancePayment Facility (other than to the extent relating to, securing or governing the Obligations under the Senior Secured Hedging Facility).

"**Insolvency or Liquidation Proceeding**" means:

(a)    any case commenced by or against the Company or any other Grantor under any Debtor Relief Law, any other proceeding for the reorganization, recapitalization or adjustment or marshalling of the assets or liabilities of the Company or any other Grantor, any

receivership or assignment for the benefit of creditors relating to the Company or any other Grantor or any similar case or proceeding relative to the Company or any other Grantor or its creditors, as such, in each case whether or not voluntary, including, without limitation, the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer (in respect of any person or any of its assets);

(b)     any liquidation, dissolution, marshalling of assets or liabilities or other winding up of or relating to the Company or any other Grantor (other than any liquidation, dissolution or winding up of any subsidiary of the Company that is permitted by the Secured Documents), in each case whether or not voluntary and whether or not involving bankruptcy or insolvency; or

(c)     any other proceeding of any type or nature in which substantially all claims of creditors of the Company or any other Grantor are determined and any payment or distribution is or may be made on account of such claims.

"**Joinder Agreement**" has the meaning assigned to such term in Section 3.15.

"**Law**" means, with respect to any Person, any international, foreign, federal, provincial, state and local statutes, laws, treaties, rules, regulations, orders, decrees, writs, injunctions or determinations of any arbitrator or court or other Governmental Authority (as defined in the Indenture), in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Lien**" means any mortgage, pledge, security interest, encumbrance, lien or charge of any kind (including any agreement to give any of the foregoing, any conditional sale or other title retention agreement or any lease in the nature thereof).

"**New York UCC**" means the Uniform Commercial Code as from time to time in effect in the State of New York.

"**Non-Controlling Authorized Representative Enforcement Date**" means, with respect to the Authorized Representative for any Series of Pari Passu Obligations, the date which is 90 days after the occurrence of both (i) an Event of Default (under and as defined in the Pari Passu Documents applicable to such Series of Pari Passu Obligations) and (ii) the receipt by each Authorized Representative under any Series of Senior Priority Obligations of a written notice from such Authorized Representative certifying that (x) such Authorized Representative is acting at the direction of the Controlling Pari Passu Secured Parties and that an Event of Default (under and as defined in the Pari Passu Documents applicable to such Series of Pari Passu Obligations) has occurred and is continuing and (y) that the Pari Passu Obligations of the Series with respect to which such Authorized Representative is the Authorized Representative is currently due and payable in full (whether as a result of acceleration thereof or otherwise) in accordance with the terms of the applicable Pari Passu Document; *provided that* the Non-Controlling Authorized Representative Enforcement Date shall be stayed and shall not occur and shall be deemed not to have occurred (1) at any time any Authorized Representative under any Series of Senior Priority Obligations has commenced and is diligently pursuing any enforcement action with respect to the Shared Collateral with reasonable diligence in light of the then existing circumstances or (2) at any time a Grantor which has granted a security interest in such Shared Collateral is then a debtor under or with respect to (or otherwise subject to) any Insolvency or Liquidation Proceeding.

"**Noteholder Claims**" shall mean all Obligations in respect of the Notes or arising under the Noteholder Documents or any of them, including all fees and expenses of the Notes Collateral

5

Agent and the Trustee thereunder and all other fees, expenses, indemnification or otherwise, and all other amounts owing or due under the terms of any Noteholder Document, as amended, restated, modified, renewed, refunded, replaced or refinanced in whole or in part from time to time.

"**Noteholder Collateral Documents**" shall mean the "Collateral Documents" as defined in the Indenture.

"**Noteholder Documents**" shall mean (a) the Indenture, the Notes and the Noteholder Collateral Documents and (b) any other related document or instrument executed and delivered pursuant to any Noteholder Document described in clause (a) above evidencing or governing any obligations thereunder, in each case, as amended, supplemented, restated, renewed, refunded, replaced, restructured, repaid, refinanced or otherwise modified, in whole or in part, from time to time.

"**Notes**" shall mean any securities issued under the Indenture.

"**Notes Collateral Agent**" has the meaning assigned to such term in the introductory paragraph hereof.

"**Obligations**" means any principal, interest, penalties, fees, indemnifications, reimbursements, damages and other liabilities payable under the documentation governing any Indebtedness (as defined in the Indenture).

"**Pari Passu Authorized Representatives**" means, collectively, (a) the Notes Collateral Agent, as the Authorized Representative for the holders of the Pari Passu Notes Obligations, (b) the Initial Additional Authorized Representative and (c) each Additional Authorized Representative for Additional Pari Passu Obligations.

"**Pari Passu Documents**" means, collectively, (a) all the Noteholder Documents (other than any Noteholder Documents that solely govern Noteholder Claims that are Senior Priority Obligations described in clause (a) of the definition thereof), (b) all the Initial Additional Pari Passu Documents (other than to the extent relating to, securing or governing any Obligations under the Senior Secured Hedging Facility) and (c) all the Additional Pari Passu Documents.

"**Pari Passu Notes Obligations**" means the Noteholder Claims with respect to the Notes issued under the Indenture prior to May 11, 2023, the terms of which are set forth in the First Supplemental Indenture dated May 11, 2023 by and among the Company, as issuer, the guarantors from time to time party thereto, the Trustee and the Notes Collateral Agent.

"**Pari Passu Obligations**" means (a) all the Pari Passu Notes Obligations, (b) all the Initial Additional Pari Passu Obligations and (c) all the Additional Pari Passu Obligations.

"**Pari Passu Secured Parties**" means the holders of any Pari Passu Obligations, the Notes Collateral Agent (solely with respect to the Pari Passu Obligations) and each Authorized Representative acting on behalf of the relevant Series of Pari Passu Secured Parties.

"**Pari Passu Security Documents**" means the Noteholder Collateral Documents, the Initial Additional Pari Passu Security Documents and each other agreement entered into in favor of an Authorized Representative for the purpose of securing Pari Passu Obligations of any Class.

"**Person**" means any individual, partnership, joint venture, firm, cooperative, corporation, limited liability company, association, trust or other enterprise or any government or political subdivision or any agency, department or instrumentality thereof.

"**Possessory Collateral**" means any Shared Collateral in the possession of the Notes Collateral Agent (or its agents or bailees), to the extent that possession or control thereof perfects a Lien thereon under the applicable Law (including the UCC) of any jurisdiction, including, without limitation, any Certificated Securities, Promissory Notes, Instruments, and Chattel Paper, in each case, delivered to or in the possession of the Note Collateral Agent under the terms of the Senior Priority Security Documents or Pari Passu Documents. All capitalized terms used in this definition and not defined elsewhere in this Agreement have the meanings assigned to such terms in the New York UCC.

"**Post-Petition Interest**" means any interest or entitlement to fees or expenses or other charges that accrues after the commencement of any Insolvency or Liquidation Proceeding, whether or not allowed or allowable in any such proceeding.

"**Proceeds**" has the meaning assigned to such term in Section 2.01 hereof.

"**Refinance**" means, in respect of any indebtedness, to refinance, extend, renew, defease, restructure, refund, replace or repay, or to issue other indebtedness or enter alternative financing arrangements in exchange or replacement for such indebtedness (and/or commitments with respect to such indebtedness), in whole or in part, part, including by adding or replacing lenders, creditors, agents, borrowers and/or guarantors, and including in each case, but not limited to, after the original instrument giving rise to such indebtedness has been terminated and including, in each case, through any credit agreement, indenture or other agreement. "Refinanced" and "Refinancing" have correlative meanings.

"**Related Secured Parties**" means, with respect to the Authorized Representative of any Class, the Secured Parties of such Class.

"**Secured Documents**" means the collective reference to (i) the Pari Passu Documents and (ii) the Senior Priority Documents.

"**Secured Obligations**" means the collective reference to the Senior Priority Obligations and (ii) the Pari Passu Obligations.

"**Secured Parties**" means the collective reference to (i) the Senior Priority Secured Parties and (ii) the Pari Passu Secured Parties.

"**Security Documents**" means the collective reference to (i) the Pari Passu Security Documents and (ii) the Senior Priority Security Documents.

"**Senior Priority Documents**" means, collectively, (a) all the Noteholder Documents (other than any Noteholder Documents to the extent relating to, securing or governing Noteholder Claims that are not Senior Priority Obligations described in clause (a) of the definition thereof), (b) all the Financing Documents (as defined in the Advance Payments Facility (other than to the extent relating to, securing or governing the Obligations thereunder that are not Senior Priority Obligations described in clause (b) of the definition thereof) and (c) all the Additional Priority Documents.

"**Senior Priority Obligations**" means (a) the Noteholder Claims with respect to the Notes issued on May 11, 2023 under the Second Supplemental Indenture dated as of May 11, 2023 by and among the Company, as issuer, the guarantors from time to time party thereto, the Trustee and the Notes Collateral Agent, (b) all Obligations under the Advance Payments Facility to the extent relating to, securing or governing the Obligations under the Senior Secured Hedging Facility and (c) all Additional Priority Obligations.

"**Senior Priority Secured Parties**" means the holders of any Senior Priority Obligations, the Notes Collateral Agent (solely with respect to the Senior Priority Obligations), the Initial Additional Authorized Representative (solely with respect to the Senior Priority Obligations) and each Authorized Representative acting on behalf of the relevant Series of Senior Priority Secured Parties.

"**Senior Priority Security Documents**" means the Noteholder Collateral Documents, the Financing Agreements (as defined in the Advance Payments Facility) and each other agreement entered into in favor of an Authorized Representative to the extent securing Senior Priority Obligations of any Class.

"**Senior Secured Hedging Facility**" has the meaning given to such term in the Indentures.

"**Series**" means (a) with respect to the Pari Passu Secured Parties, each of (i) the Pari Passu Secured Parties in respect of the Pari Passu Notes Obligations, (ii) the Pari Passu Secured Parties in respect of the Initial Additional Pari Passu Obligations and (iii) the Additional Pari Passu Secured Parties that become subject to this Agreement after the date hereof that are represented by a common Authorized Representative (in its capacity as such for such Additional Pari Passu Secured Parties), (b) with respect to any Pari Passu Obligations, each of (i) the Pari Passu Notes Obligations, (ii) the Initial Additional Pari Passu Obligations and (iii) the Additional Pari Passu Obligations incurred pursuant to any Additional Pari Passu Document, which pursuant to any Joinder Agreement, are to be represented hereunder by a common Authorized Representative (in its capacity as such for such Additional Pari Passu Obligations), (c) with respect to Senior Priority Secured Parties, each of (i) the Senior Priority Secured Parties in respect of the Senior Priority Obligations described in clause (a) or (b) of the definition thereof and (ii) the Additional Priority Secured Parties that become subject to this Agreement after the date hereof that are represented by a common Authorized Representative (in its capacity as such for such Additional Priority Secured Parties) and (d) with respect to any Senior Priority Obligations, each of (i) the Senior Priority Obligations in respect of the Senior Priority Obligations described in clause (a) or (b) of the definition thereof and (ii) the Additional Priority Obligations incurred pursuant to any Additional Priority Document, which pursuant to any Joinder Agreement, are to be represented hereunder by a common Authorized Representative (in its capacity as such for such Additional Priority Obligations).

"**Shared Collateral**" means, at any time, Collateral in which the holders of any Series of Senior Priority Obligations and/or any Series of Pari Passu Obligations (or their respective Authorized Representatives) hold a valid and perfected security interest at such time.

"**Subsidiary Guarantors**" means, collectively, (a) the "Subsidiary Guarantors" as defined in the Indenture and (b) the "Subsidiary Guarantors" or analogous term under any Additional Pari Passu Document or Additional Priority Document or the Advance Payment Facility.

"**Trustee**" means Computershare Trust Company, N.A., as trustee under the Indenture, and its successors and permitted assigns in such capacity.

"**UCC**" means the Uniform Commercial Code.

## 2.    Priorities and Agreements with respect to Shared Collateral

### 2.01    Priority of Claims

(a)    Anything contained herein or in any of the Secured Documents to the contrary notwithstanding, if an Event of Default has occurred and is continuing, and the Notes

Collateral Agent, the Initial Additional Authorized Representative, any Senior Priority Secured Party or any Pari Passu Secured Party is taking action to enforce rights in respect of any Shared Collateral, or any distribution is made in respect of any Shared Collateral in any Insolvency or Liquidation Proceeding of any Grantor, any Senior Priority Secured Party or any Pari Passu Secured Party receives any payment pursuant to any intercreditor agreement (other than this Agreement) with respect to any Shared Collateral, the proceeds of any sale, collection or other liquidation of any such Shared Collateral on account of such enforcement of rights by the Notes Collateral Agent, the Initial Additional Authorized Representative, any Senior Priority Secured Party or any Pari Passu Secured Party or any such distribution or payment received by the Notes Collateral Agent, the Initial Additional Authorized Representative, any Senior Priority Secured Party or any Pari Passu Secured Party pursuant to any such Insolvency or Liquidation Proceeding or any such intercreditor agreement with respect to such Shared Collateral (all proceeds of any sale, collection or other liquidation of any Shared Collateral and all such distributions or payments being collectively referred to as "**Proceeds**"), to the extent permitted by applicable Law shall be applied:

**FIRST**, to the payment of all costs and reasonable expenses incurred by the Notes Collateral Agent, the Trustee and the Initial Additional Authorized Representative (in their respective capacities as such) in connection with such sale, collection or other liquidation;

**SECOND**, to the payment in full of all amounts constituting fees, indemnities, expenses and other amounts (other than principal, interest, advances and premiums) owed to the Notes Collateral Agent, the Trustee and the Initial Additional Authorized Representative (in their respective capacities as such) and any other trustee or agent for any other Series of Senior Priority Obligations or Pari Passu Obligations (in their capacities as such);

**THIRD**, to the payment in full of all of the remaining Senior Priority Obligations, the amounts so applied to be distributed on a *pari passu* basis to each Series of Senior Priority Obligations, in each case, in accordance with the terms of the applicable agreements or documents governing such Series of Senior Priority Obligations;

**FOURTH**, to the payment in full of all interest or entitlement to fees or expenses or other charges that accrue on the Senior Priority Obligations after the commencement of any Insolvency or Liquidation Proceeding with respect to the Company or any of its subsidiaries, whether or not allowed or allowable in any such proceeding;

**FIFTH**, to the payment in full of all remaining Pari Passu Obligations, the amounts so applied to be distributed on a *pari passu* basis to each Series of Pari Passu Obligations, in each case, in accordance with the terms of the applicable agreements or documents governing such Series of Pari Passu Obligations;

**SIXTH**, to the payment in full of all interest or entitlement to fees or expenses or other charges that accrue on the Pari Passu Obligations after the commencement of any Insolvency or Liquidation Proceeding with respect to the Company or any of its subsidiaries, whether or not allowed or allowable in any such proceeding; and

**SEVENTH**, to the Company, the Grantors, their successors or assigns, or as a court of competent jurisdiction may otherwise direct.

It being understood and agreed that the provisions of this Section 2.01 shall constitute a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code between and among the holders of the Secured Obligations.

It is acknowledged that the Senior Priority Obligations and the Pari Passu Obligations may, in each case, subject to the limitations set forth in the then extant Secured Documents, be increased, extended, renewed, replaced, restated, supplemented, restructured, repaid, refunded, Refinanced or otherwise amended or modified from time to time, all without affecting the priorities set forth in Section 2.01(a) or the provisions of this Agreement defining the relative rights of the Senior Priority Secured Parties and the Pari Passu Secured Parties.

**2.02    Actions With Respect to Shared Collateral; Prohibition on Contesting Liens**

(a)    Prior to the earlier of the Discharge of Senior Priority Obligations and the Non-Controlling Authorized Representative Enforcement Date, the Pari Passu Authorized Representatives shall refrain from taking any action to exercise any rights hereunder and under the Pari Passu Security Documents, the Pari Passu Documents or otherwise with respect to any Shared Collateral unless it is instructed to do so (i) by each Authorized Representative of each Series of Senior Priority Obligations or (ii) in the event that the Pari Passu Authorized Representatives has not received instructions from each Authorized Representative for each Series of Senior Priority Obligations, or the Pari Passu Authorized Representatives have received conflicting instructions from such Authorized Representatives, by the Controlling Senior Priority Secured Parties.

(b)    Each of the Authorized Representatives agrees that it will not accept any Lien on any Collateral for the benefit of any Senior Priority Obligations or Pari Passu Obligations other than pursuant to the Senior Priority Documents and the Pari Passu Documents, as applicable, and by executing this Agreement (or a Joinder Agreement), each Authorized Representative, on behalf of itself and the relevant Secured Parties, agrees to be bound by the provisions of this Agreement and the other Secured Documents applicable to it.

(c)    Each of the Senior Priority Secured Parties and Pari Passu Secured Parties agrees that it will not (and hereby waives any right to contest or support any other Person in contesting), in any proceeding (including any Insolvency or Liquidation Proceeding), contest the perfection, priority, validity or enforceability of a Lien held by or on behalf of any of the Senior Priority Secured Parties or the Pari Passu Secured Parties in all or any part of the Collateral, or the provisions of this Agreement; provided that nothing in this Agreement shall be construed to prevent or impair the rights of any Authorized Representative to enforce this Agreement.

**2.03    No Interference; Payment Over**

(a)    Each Authorized Representative, on behalf of itself and the relevant Secured Parties, agrees that (i) it will not challenge or question in any proceeding the validity or enforceability of any Senior Priority Obligations or any Senior Priority Document or the validity, attachment, perfection or priority of any Lien under any Senior Priority Security Document or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement, (ii) it will not challenge or question in any proceeding the validity or enforceability of any Pari Passu Obligations or any Pari Passu Document or the validity, attachment, perfection or priority of any Lien under any Pari Passu Security Document and (iii) it will not take or cause to be taken any action the purpose or intent of which is, or could be, to interfere, hinder or delay, in any manner,

whether by judicial proceedings or otherwise, any sale, transfer or other disposition of the Shared Collateral.

(b)    Each Authorized Representative, on behalf of itself and the relevant Secured Parties agrees that if it shall obtain possession of any Shared Collateral or shall realize any proceeds or payment in respect of any such Shared Collateral (other than from a distribution in accordance with the provisions of Section 2.01), pursuant to any Secured Document or by the exercise of any rights available to it under applicable Law or in any Insolvency or Liquidation Proceeding or through any other exercise of remedies (including pursuant to any intercreditor agreement), at any time prior to the Discharge of each of the Senior Priority Obligations, then it shall hold such Shared Collateral, proceeds or payment in trust for the other Secured Parties and promptly transfer such Shared Collateral, proceeds or payment, as the case may be, to the Authorized Representatives for the Senior Priority Secured Parties, to be distributed in accordance with the provisions of Section 2.01 hereof.

**2.04    Certain Agreements with respect to Bankruptcy or Insolvency Proceedings**

This Agreement shall continue in full force and effect notwithstanding the commencement of any proceeding under any Debtor Relief Law by or against the Company or any other Grantor.

**2.05    Reinstatement**

In the event that any of the Secured Obligations shall be paid in full and such payment or any part thereof shall subsequently, for whatever reason (including an order or judgment for disgorgement of a preference under the Bankruptcy Code, or any similar Debtor Relief Law, or the settlement of any claim in respect thereof), be required to be returned or repaid, the terms and conditions of this Article 2 shall be fully applicable thereto until all such Secured Obligations shall again have been paid in full in cash.

**2.06    Refinancings**

The Secured Obligations of any Series may be Refinanced, in whole or in part, in each case, without notice to, or the consent (except to the extent a consent is otherwise required to permit such Refinancing under each applicable Secured Document) of any Secured Party of any other Series of Secured Obligations, all without affecting the priorities provided for herein or the other provisions hereof; *provided that* if any obligations of the Grantors in respect of such Refinancing indebtedness shall be secured by Liens on any Shared Collateral, then such obligations and the holders thereof shall be subject to and bound by the provisions of this Agreement and the Authorized Representative of the holders of any such Refinancing indebtedness shall have executed a Joinder Agreement on behalf of the holders of such Refinancing indebtedness.

**2.07    Possessory Collateral Agent as Gratuitous Bailee for Perfection**

(a)    The Notes Collateral Agent agrees to hold any Shared Collateral constituting Possessory Collateral that is part of the Collateral in its possession or control (or in the possession or control of its agents or bailees) as gratuitous bailee for the benefit of each other Senior Priority Secured Party and Pari Passu Secured Party (such bailment being intended, among other things, to satisfy the requirements of Sections 8-301(a)(2) and 9-313(c) of the New York UCC and the UCC of any other applicable jurisdiction) and any assignee solely for the purpose of perfecting the security interest granted in such Possessory Collateral, if any, pursuant to the applicable Senior Priority Security Documents and Pari Passu Documents, in each case, subject to the terms and conditions of this Section 2.07.

Pending delivery to the Notes Collateral Agent, each Authorized Representative agrees to hold any Shared Collateral constituting Possessory Collateral, from time to time in its possession, as gratuitous bailee for the benefit of each other Senior Priority Secured Party and Pari Passu Secured Party and any assignee, solely for the purpose of perfecting the security interest granted in such Possessory Collateral, if any, pursuant to the applicable Senior Priority Security Documents or Pari Passu Documents, in each case, subject to the terms and conditions of this Section 2.07.

(b)     The duties or responsibilities of the Notes Collateral Agent and each Authorized Representative under this Section 2.07 shall be limited solely to holding any Shared Collateral constituting Possessory Collateral as gratuitous bailee for the benefit of each other Senior Priority Secured Party and each Pari Passu Secured Party for purposes of perfecting the Lien held by such Senior Priority Secured Parties and Pari Passu Secured Parties therein.

## 3.    Miscellaneous

### 3.01  Notices

All notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(a)     if to the Notes Collateral Agent, to it at the following address:

Computershare Trust Company, N.A.
9062 Old Annapolis Road
Columbia, Maryland 21045
Attn: David Diaz

(b)     if to the Initial Additional Authorized Representative, to it at the following address:

Cargill International Trading Pte Ltd.
138 Market Street, # 17 – 01 CapitaGreen
Singapore  048946
Attn: Head of Iron Ore Operations
Email: ironeoreops@cargill.com; ironeoreops@cargill.com;
        phil_mulvihill@cargill.com; paul_carello@cargill.com

(c)     if to any other additional Authorized Representative, to it at the address set forth in the applicable Joinder Agreement; and

(d)     if to any Grantor, to it (or, in the case of any Grantor other than the Company, to it in care of the Company) at the address below:

c/o Tacora Resources Inc.
102 NE 3rd Street, Suite 120,
Grand Rapids, MN 55744,
Attention: Chief Financial Officer
Attention: Joe Broking
Email: joe.broking@tacoraresources.com

Any party hereto may change its address or telecopy number for notices and other communications hereunder by notice to the other parties hereto. All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt (if a Business Day) and on the next Business Day thereafter (in all other cases) if delivered by hand or overnight courier service or sent by telecopy or on the date five Business Days after dispatch by certified or registered mail if mailed, in each case delivered, sent or mailed (properly addressed) to such party as provided in this Section 3.01 or in accordance with the latest unrevoked direction from such party given in accordance with this Section 3.01. As agreed to in writing among the Notes Collateral Agent and each Authorized Representative from time to time, notices and other communications may also be delivered by e-mail to the e-mail address of a representative of the applicable party provided from time to time by such party.

### 3.02    Waivers; Amendment; Joinder Agreements

(a)    No failure or delay on the part of any party hereto in exercising any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the parties hereto are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provision of this Agreement or consent to any departure by any party therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) of this Section, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on any party hereto in any case shall entitle such party to any other or further notice or demand in similar or other circumstances.

(b)    Neither this Agreement nor any provision hereof may be terminated, waived, amended or modified (other than pursuant to any Joinder Agreement) except pursuant to an agreement or agreements in writing entered into by the Company and each Authorized Representative.

(c)    Notwithstanding the foregoing, (i) without the consent of any party hereto, any Authorized Representative may become a party hereto by execution and delivery of a Joinder Agreement in accordance with Section 3.15 and upon such execution and delivery, such Authorized Representative and the relevant Secured Parties and Additional Pari Passu Obligations or Additional Priority Obligations, as applicable, of the Series of Secured Obligations for which such Authorized Representative is acting shall be subject to the terms hereof and the terms of the other Secured Documents applicable thereto and (ii) in connection with any Refinancing of any Series or Secured Obligations, or the incurrence of Additional Pari Passu Obligations or Additional Priority Obligations, in each case, the Authorized Representatives then party hereto may enter (and are hereby authorized to enter without the consent of any other Secured Party), at the request of the Company, into such amendments or modifications of this Agreement as are reasonably necessary to reflect such Refinancing or such incurrence and are reasonably satisfactory to each Authorized Representative and the Company.

### 3.03    Parties in Interest

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, as well as the other Senior Priority Secured Parties and Pari

Passu Secured Parties, all of whom are intended to be bound by, and to be third party beneficiaries of, this Agreement.

**3.04    Effectiveness; Survival of Agreement**

This Agreement shall become effective upon the execution of a counterpart hereof by each of the parties hereto on the date hereof.  All covenants, agreements, representations and warranties made by any party in this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement.

**3.05    Counterparts**

This Agreement may be executed in counterparts, each of which shall constitute an original but all of which when taken together shall constitute a single contract.  Delivery of an executed signature page to this Agreement by facsimile or electronic transmission shall be as effective as delivery of a manually signed counterpart of this Agreement.

**3.06    Severability**

Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.  The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

**3.07    Governing Law**

THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

**3.08    Submission To Jurisdiction; Waivers**

Each party hereto hereby irrevocably and unconditionally:

    (i)    submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the courts of the State of New York, the courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

    (ii)    consents that any such action or proceeding shall be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

    (iii)    agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such party at its address referred to in Section 3.01;

(iv)    agrees that nothing herein shall affect the right of any Secured Party to effect service of process in any other manner permitted by applicable law or shall limit the right of any Secured Party to sue in any other jurisdiction; and

(v)    waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section 3.08 any special, exemplary, punitive or consequential damages.

**3.09    Waiver of Jury Trial**

EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND FOR ANY COUNTERCLAIM THEREIN.

**3.10    Headings**

Article, Section and Annex headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

**3.11    Conflicts**

In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of any of the other Secured Documents, Senior Priority Security Documents or Pari Passu Documents, the provisions of this Agreement shall control. Notwithstanding anything herein the contrary, (i) solely as among the Pari Passu Secured Parties, in the event of any conflict between this Agreement and the Pari Passu Intercreditor Agreement, the Pari Passu Intercreditor Agreement shall govern and control; *provided that* no Pari Passu Secured Party shall be required to take any action under the Pari Passu Intercreditor Agreement that would violate this Agreement and (ii) solely as among the Senior Priority Secured Parties, in the event of any conflict between this Agreement and any intercreditor agreement entered into between them, such intercreditor shall govern and control; *provided that* no Senior Priority Secured Party shall be required to take any action under any such intercreditor agreement that would violate this Agreement.

**3.12    Relative Rights**

Notwithstanding anything in this Agreement to the contrary (except to the extent expressly contemplated by Article 2 hereof), nothing in this Agreement is intended to or will (a) amend, waive or otherwise modify the provisions of any other Secured Document, or permit the Company or any other Grantor to take any action, or fail to take any action, to the extent such action or failure would otherwise constitute a breach of or default under any other Secured Document, (b) impair the obligations of any Grantor, which are absolute and unconditional, to pay the Senior Priority Obligations or the Pari Passu Obligations as and when the same shall become due and payable in accordance with their terms or (c) obligate the Company or any Grantor to take any action, or fail to take any action, that would otherwise constitute a breach of, or default under, any Secured Document.

**3.13    Integration**

This Agreement together with the other Secured Documents, the Senior Priority Security Documents and the Pari Passu Documents represents the agreement of each of the Grantors, the Senior Priority Secured Parties and the Pari Passu Secured Parties with respect to the subject matter hereof and there are no promises, undertakings, representations or warranties by any Grantor, the Notes Collateral Agent, any Pari Passu Secured Party or any other Senior Priority

Secured Party relative to the subject matter hereof not expressly set forth or referred to herein or in the other Secured Documents, the Senior Priority Security Documents or the Pari Passu Documents.

**3.14    Further Assurances**

Each Authorized Representative agrees that it will execute, or will cause to be executed, any and all further documents, agreements and instruments, and take all such further actions, as may be required under any applicable Law, or which any Authorized Representative may reasonably request, to effectuate the terms of this Agreement.

**3.15    Additional Secured Obligations**

To the extent, but only to the extent, permitted by the provisions of each extant Secured Document, the Company may incur Additional Pari Passu Obligations or Additional Priority Obligations after the date hereof, if and subject to the condition that the proposed Authorized Representative of any Series of such Additional Pari Passu Obligations or Additional Priority Obligations, as applicable (each, an "**Additional Authorized Representative**"), acting on behalf of the holders of such Additional Pari Passu Obligations or Additional Priority Obligations, as applicable, becomes a party to this Agreement by satisfying the conditions set forth in clauses (i) through (iii) of the immediately succeeding paragraph.

In order for an Additional Authorized Representative to become a party to this Agreement,

(i)      such Additional Authorized Representative shall have delivered to each then-existing Authorized Representative an instrument substantially in the form of Exhibit 1 (with such changes as may be reasonably approved by such parties) (a "**Joinder Agreement**") pursuant to which such Additional Authorized Representative becomes an Authorized Representative hereunder, and the Series of Additional Pari Passu Obligations or Additional Priority Obligations, as applicable, in respect of which such Additional Authorized Representative is the Authorized Representative become subject hereto and bound hereby;

(ii)     the Company shall have delivered to the Notes Collateral Agent and the Initial Additional Authorized Representative (with a copy to each other then-existing Authorized Representative) (x) true and complete copies of each of the Additional Pari Passu Documents or Additional Priority Documents, as applicable, relating to such Additional Pari Passu Obligations or such Additional Priority Obligations, as applicable, certified as being true and correct by an Officer (as defined in the Indenture) of the Company, and (y) a certificate of an Officer of the Company (A) identifying the obligations to be designated as Additional Pari Passu Obligations or Additional Priority Obligations, as applicable, and the initial aggregate principal amount or face amount thereof and (B) certifying that such Additional Pari Passu Obligations or Additional Priority Obligations, as applicable, do not violate, and are not prohibited from being incurred and secured by Liens on the Collateral with the priority set forth herein by, any terms and conditions of this Agreement or any other Secured Document; and

(iii)    all filings, recordations and/or amendments or supplements to the Pari Passu Security Documents or the Senior Priority Security Documents necessary (or otherwise requested by the Additional Authorized Representative) to confirm and perfect the Liens securing the relevant obligations relating to such Additional Pari Passu Obligations or such Additional Priority Obligations, as applicable, shall have been made, executed and/or delivered by each applicable Grantor.

## 4. No Liability

### 4.01 Information

The Authorized Representative or Secured Parties of any Class shall have no duty to disclose to any Secured Party of any other Class any information relating to the Company or any of its subsidiaries, or any other circumstance bearing upon the risk of nonpayment of any of the Senior Priority Obligations or the Pari Passu Obligations, that is actually known to any of them or any of their Affiliates. If the Notes Collateral Agent or the Authorized Representative or any Secured Party of any Class, in its reasonable judgement, undertakes at any time to provide any such information to, as the case may be, the Authorized Representative or any Secured Party of any other Class, it shall be under no obligation (i) to make, and shall not be deemed to have made, any express or implied representation or warranty, including with respect to the accuracy, completeness, truthfulness or validity of the information so provided, (ii) to provide any additional information or to provide any such information on any subsequent occasion or (iii) to undertake any investigation regarding such information

### 4.02 No Warranties or Liability

(a)    Each Authorized Representative, for itself and on behalf of its Related Secured Parties, acknowledges and agrees that no Authorized Representative or any Secured Party of any other Class has made any express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectability or enforceability of any of the Pari Passu Documents, any of the Priority Documents, the ownership or value of any Shared Collateral or the perfection or priority of any Liens thereon. The Authorized Representative and the Secured Parties of any Class will be entitled to manage and supervise their loans and other extensions of credit in the manner determined by them.

(b)    No Authorized Representative or Secured Parties of any Class shall have any express or implied duty to the Authorized Representative or any Secured Party of any other Class to act or refrain from acting in a manner that allows, or results in, the occurrence or continuance of a Default or an Event of Default under any Pari Passu Document or Senior Priority Document (other than, in each case, this Agreement), regardless of any knowledge thereof that they may have or be charged with.

[Remainder of this page intentionally left blank]

17

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**COMPUTERSHARE TRUST COMPANY, N.A.,**
as Notes Collateral Agent

By: _____

Name: Amy Pratt

Title: Vice President

**CARGILL INTERNATIONAL TRADING PTE LTD.,**
as Initial Additional Authorized Representative

By: _____

Name:

Title:

**TACORA RESOURCES INC.,**
as Grantor

By: _____

Name: Joe Broking

Title: Chief Executive Officer

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**COMPUTERSHARE TRUST COMPANY, N.A.,**
as Notes Collateral Agent


By: _____

Name:
Title:


**CARGILL INTERNATIONAL TRADING PTE LTD.,**
as Initial Additional Authorized Representative

By: _____

Name: PHIL MULVIHILL
Title: INVESTMENT LEAD


**TACORA RESOURCES INC.,**
as Grantor


By: _____

Name:
Title:

18

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**COMPUTERSHARE TRUST COMPANY, N.A.,**
as Notes Collateral Agent

By: _____

Name:

Title:

**CARGILL INTERNATIONAL TRADING PTE LTD.,**
as Initial Additional Authorized Representative

By: _____

Name:

Title:

**TACORA RESOURCES INC.,**
as Grantor

By: _____

Name:   Joe Broking

Title:   Chief Executive Officer

**Exhibit 1**

**Form of Joinder Agreement**

Joinder No. [●] dated as of [●], 20[●] to the **Collateral Agency and Intercreditor Agreement** dated as of May 11, 2023 (the "**Intercreditor Agreement**"), among TACORA RESOURCES INC., a corporation incorporated under the laws of the Province of Ontario, Canada (the "**Company**"), the other GRANTORS (as defined below) party hereto, COMPUTERSHARE TRUST COMPANY, N.A., as notes collateral agent (in such capacity, along with its successors and permitted assigns, the "Notes Collateral Agent"), as Authorized Representative for the Indenture Secured Parties under the Indenture (as defined below), CARGILL INTERNATIONAL TRADING PTE LTD., as the Authorized Representative for the Initial Additional Pari Passu Secured Parties and the Senior Priority Secured Parties under the Advance Payments Facility (as defined below) (in such capacities, along with its successors and permitted assigns, the "Initial Additional Authorized Representative"), and each Additional Authorized Representative from time to time party hereto, as the Authorized Representative for any Secured Parties of any other Class.

(a)    Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned to such terms in the Intercreditor Agreement.

(b)    As a condition to the ability of the Grantors to incur [Additional Pari Passu Obligations][Additional Priority Obligations][1] and to secure such [Additional Pari Passu Obligations][ Additional Priority Obligations] with the liens and security interests created by the [Pari Passu Security Documents][ Senior Priority Security Documents], the undersigned Additional Authorized Representative in respect of such [Additional Pari Passu Obligations][Additional Priority Obligations] is required to become an Authorized Representative, and such [Additional Pari Passu Obligations][Additional Priority Obligations] and the [Additional Pari Passu Secured Parties] [Additional Priority Secured Parties] in respect thereof, in each case are required to become subject to and bound by the Intercreditor Agreement. Section 3.15 of the Intercreditor Agreement provides that such Additional Authorized Representative shall become an Authorized Representative, and such [Additional Pari Passu Obligations] [Additional Priority Obligations] and such [Additional Pari Passu Secured Parties] [Additional Priority Secured Parties] shall become subject to and bound by the Intercreditor Agreement, in each case upon the execution and delivery by the undersigned Additional Authorized Representative of this Joinder Agreement and the satisfaction of the other conditions set forth in Section 3.15 of the Intercreditor Agreement. The undersigned Additional Authorized Representative (the "**New Representative**") is executing this Joinder Agreement in accordance with the requirements of the Intercreditor Agreement.

Accordingly, the Notes Collateral Agent and the New Representative agree as follows:

2.    In accordance with Section 3.15 of the Intercreditor Agreement, the New Representative by its signature below becomes an Authorized Representative under, and the related [Additional Pari Passu Obligations][Additional Priority Obligations] (the "**New Secured Obligations**") incurred under the [_____][2] (collectively, the "**New Secured Documents**") and the [Additional Pari Passu Secured Parties][Additional Priority Secured Parties] with respect to the New Secured Obligations (the "**New Secured Parties**") shall in each case become subject to and bound by, the Intercreditor Agreement with the same force and effect as if the New Representative had originally been named therein as an Authorized Representative and the New Representative, on

---

[1] *Select as applicable*

[2] *Describe relevant debt document together with all ancillary agreements.*

its behalf and on behalf of such New Secured Parties, hereby agrees to all the terms and provisions of the Intercreditor Agreement applicable to it as an Authorized Representative and to the New Secured Parties. Upon the execution and delivery of this Joinder Agreement by the Notes Collateral Agent, the Company and the New Representative, (w) each reference to an "**Authorized Representative**" in the Intercreditor Agreement shall be deemed to include the New Representative, (x) each reference to "**Secured Documents**", "**[Pari Passu Documents][Priority Documents]**" shall in each case be deemed to include the New Secured Documents, (y) each reference to "**Secured Obligations**" and "**[Pari Passu Secured Obligations][ Senior Priority Secured Obligations]**" shall in each case be deemed to include the New Secured Obligations and (z) each reference to a "**Secured Party**" shall be deemed to include the New Representative and the New Secured Parties. The Intercreditor Agreement is hereby incorporated herein by reference.

3.  The New Representative represents and warrants to the Notes Collateral Agent, each Authorized Representative and the other Secured Parties, individually, that (i) it has full power and authority to enter into this Joinder, in its capacity as [agent] [trustee], (ii) this Joinder has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, and (iii) the New Secured Documents provide that, upon the New Representative's entry into this Joinder Agreement, the New Secured Parties in respect of the New Secured Obligations will be subject to and bound by the provisions of the Intercreditor Agreement as [Additional Pari Passu Secured Parties][Additional Priority Secured Parties].

4.  This Joinder may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Joinder shall become effective when the Notes Collateral Agent shall have received a counterpart of this Joinder that bears the signatures of the New Representative. Delivery of an executed signature page to this Joinder by facsimile transmission shall be as effective as delivery of a manually signed counterpart of this Joinder.

5.  Except as expressly supplemented hereby, the Intercreditor Agreement shall remain in full force and effect.

6.  THIS JOINDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. THE PROVISIONS OF SECTION 3.08 OF THE INTERCREDITOR AGREEMENT IN RESPECT OF SUBMISSION TO JURISDICTION SHALL APPLY TO THIS JOINDER IN ALL RESPECTS.

7.  In case any one or more of the provisions contained in this Joinder should be held invalid, illegal or unenforceable in any respect, no party hereto shall be required to comply with such provision for so long as such provision is held to be invalid, illegal or unenforceable, but the validity, legality and enforceability of the remaining provisions contained herein and in the Intercreditor Agreement shall not in any way be affected or impaired. The parties hereto shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

8.  All communications and notices hereunder shall be in writing and given as provided in Section 3.01 of the Intercreditor Agreement. `All communications and notices hereunder to the New Representative shall be given to it at its address set forth below its signature hereto.

9. The Company agrees to reimburse the Notes Collateral Agent and the New Representative for their reasonable out-of-pocket expenses in connection with this Joinder, including the reasonable fees, other charges and disbursements of counsel.

**IN WITNESS WHEREOF**, the New Representative has duly executed this Joinder to the Intercreditor Agreement as of the day and year first above written.

as _____ for the holders of _____ ,

_____
By:
Name:
Title:

Address for notices:

attention of:
Telecopy:

Acknowledged by:

**COMPUTERSHARE TRUST COMPANY, N.A.,**
as Notes Collateral Agent

_____
By:
Name:
Title:

**CARGILL INTERNATIONAL TRADING PTE LTD.,**
as Initial Additional Authorized Representative

_____
By:
Name:
Title:

**TACORA RESOURCES INC.,**
as Grantor

_____
By:
Name:   Joe Broking
Title:    Chief Executive Officer

22