# EXHIBIT G



## ONTARIO SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

## COUNSEL SLIP/ENDORSEMENT

**COURT FILE NO.:** CV-23-00707394-00CL  **DATE:** 26 July 2024

**NO. ON LIST:** 1

**TITLE OF PROCEEDING:** IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF TACORA RESOURCES INC

**BEFORE JUSTICE:** KIMMEL

### PARTICIPANT INFORMATION

**For Plaintiff, Applicant, Moving Party, Crown:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| YANG, PHILIP<br>NICHOLSON, LEE<br>TAYLOR, ASHLEY<br>RAMBARAN, NATASHA | TACORA RESOURCES INC. | pyang@stikeman.com<br>leenicholson@stikeman.com<br>ataylor@stikeman.com<br>nrambaran@stikeman.com |

**For Defendant, Respondent, Responding Party, Defence:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| TOLANI, SHAAN | COMPUTERSHARE TRUST COMPANY | tolanis@bennettjones.com |

**For Other, Self-Represented:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| DIETRICH, JANE<br>MERSKEY, ALAN<br>JACOBS, RYAN | FTI CONSULTING - MONITOR | jdietrich@cassels.com<br>amerskey@cassels.com<br>rjacobs@cassels.com |
| WASSERMAN, MARC<br>DE LELLIS, MICHAEL<br>STOTHART, SARAH | CONSORTIUM BOND GROUP | mwasserman@osler.com<br>mdelellis@osler.com<br>sstothart@goodmans.ca |
| | | |

| DESCOURS, CAROLINE<br>CHADWICK, ROB<br>KOLLA, PETER<br>STOTHART, SARAH<br>TEE, BRITTNI | CARGILL, INCORPORATED<br>CARGILL INTERNATIONAL TRADING PTE LTD. | cdescours@goodmans.ca<br>rchadwick@goodmans.ca<br>pkolla@goodmans.ca<br>sstothart@goodmans.ca<br>btee@goodmans.ca |
|---|---|---|
| APOSTOLATOS, GERRY | QUEBEC NORTH SHORE AND LABRADOR RAILWAY INC. | gerry.apostolatos@langlois.ca |
| THORNE, JOE | 1128349 B.C. LTD | joethorne@stewartmckelvey.com |
| RICCI, DEREK<br>MCPARLAND, NATASHA | CROSSINGBRIDGE | dricci@dwpv.com<br>nmcparland@dwpv.com |

**ENDORSEMENT OF JUSTICE KIMMEL:**

1. After a lengthy and sometimes acrimonious CCAA process that involved multiple attempts (pre-and post-filing) to achieve a going concern transaction that deleverages Tacora's capital structure and that amends an onerous offtake agreement with a Cargill affiliate, Tacora has entered into a subscription agreement with certain significant stakeholders (Millstreet Capital Management LLC, as investment manager on behalf of multiple noteholders ("Millstreet"), OSP, LLC, on behalf of certain managed funds ("OSP"), and Cargill, Incorporated, collectively, the "Investors") dated July 21, 2024 (the "Subscription Agreement").
2. Execution of the Subscription Agreement represents the culmination of extensive solicitation efforts on the part of Tacora which commenced in March 2023 and continued after the commencement of the CCAA proceedings in accordance with a court approved Solicitation Process[1] and court approved Sale Process. Together, these three solicitation and sale processes resulted in a broad and robust canvassing of parties potentially interested in Tacora's business and assets.
3. The transactions contemplated by the Subscription Agreement represent the best and only available going concern outcome for Tacora that has come out of these efforts. Among other things, they: (a) preserve Tacora as a going concern for the benefit of its employees, suppliers and other stakeholders; (b) deleverage Tacora and capitalize the Company with committed equity financing; (c) avoid the need to transfer the Company's permits and licenses; and (d) preserve the Company's tax attributes.
4. No alternative transactions emerged from these processes that would provide full repayment to the Senior Notes or Senior Priority Notes. Despite the compromise of their indebtedness, parties collectively holding 71.5% of the obligations of Tacora's aggregate notes (being 55.3% of the Senior Priority Notes and 73.4% of the Senior Notes) support the approvals sought by Tacora in respect of the Subscription Agreement.
5. In addition to the support of Cargill (in its various stakeholder capacities, as secured lender, unsecured lender, DIP lender, service provider, etc.) and of the majority of notes, the contemplated preferred transactions under the Subscription Agreement are recommended by the Monitor and not opposed by any of Tacora's remaining stakeholders. The proposed transactions are conditional upon the granting of an Approval and Reverse Vesting Order that includes the following relief:
    a. approval of the Subscription Agreement;
    b. approval of the Transactions contemplated in the Subscription Agreement, including, *inter alia*, execution of a new offtake agreement, new iron ore onshore purchase agreement, and new margin facility between the Company and Cargill to replace the Offtake Agreement, the

---

[1] Capitalized terms not otherwise defined in this endorsement shall have the meanings ascribed to them in the applicant's factum filed in support of this motion.

       Stockpile Agreement, and the Margin Advances available to the Company under the APF, and authorizing and directing Tacora to take such additional steps and execute such additional documents as are necessary or desirable for completion of the Transactions; and

    c. granting Releases in favour of the Released Parties from the Released Claims.

6. An RVO transaction has various benefits, including the preservation of Tacora's permits and licenses and tax attributes, and timely completion to avoid consequences arising as a result of the volatile price of iron ore and the ongoing significant costs of these proceedings.

7. As a result of the Transactions contemplated by the Subscription Agreement, Tacora will continue operating as a going concern as the second largest employer in the Labrador West region, preserving employment for its approximately 463 employees and providing the opportunity for ongoing business relationships for its suppliers of goods and services. The Transactions will also allow Tacora to execute on its long-term plan to upgrade and modernize the Scully Mine.

8. The Subscription Agreement contemplates a target closing date of August 30, 2024. It has an outside Closing Date of October 10, 2024.

9. This court and other court's in Canada have been willing to grant reverse vesting orders ("RVOs") in appropriate circumstances, where certain requirements are satisfied. RVO's remain the exception rather than the norm. This is, however, a case in which the requirements for approval of an RVO are met, as prescribed in *Harte Gold (Re)*, 2022 ONSC 653 and s. 36(3) of the CCAA with regard to the factors prescribed in *Royal Bank of Canada v. Soundair Corp.*, 1991 CanLII 2727 (Ont CA). See also *Just Energy Group Inc et al v. Morgan Stanley Capital Group Inc et al*, 2022 ONSC 6354 at paras., 30-31.

10. It has become more common in Canada for third party releases in favour of the parties to a restructuring, their professional advisors, their directors and officers, and the Monitor to be approved outside of a CCAA plan in the context of a transaction, including in the context of RVO transactions. Court ordered third party releases, such as are contemplated in favour of certain of the Released Parties in this case, are carefully scrutinized by the court and not granted as a matter of course. They must satisfy the requirements set out in *Lydian International Limited (Re)*, 2020 ONSC 4006 at para. 54. See also *Harte Gold*, at paras. 78-86. Those requirements have been satisfied in this case. Importantly, the record demonstrates that there is a reasonable connection between the claims being compromised and the restructuring achieved by the RVO. The release language has been tailored to the particular circumstances of this case, including one further change that was made to the form of order after the appearance today.

11. For the reasons set out in much greater detail in the factums filed by the Applicant and Cargill, I have determined that it is just and appropriate to grant the proposed Approval and Reverse Vesting Order. Given the scrutiny that the court must apply to consideration of RVOs and third party releases, it is my intention to issue further supplementary reasons at a later date to explain the justification for the court's approval of these aspects of the order signed today.

12. Tacora also seeks an Ancillary Order:
    a. extending the Stay Period to and including October 7, 2024;
    b. approving the Third Amended and Restated DIP Facility Term Sheet dated July 12, 2024, between Tacora and Cargill, Incorporated (the "Third A&R DIP Agreement");
    c. approving the Monitor's Reports and the activities of the Monitor referred to therein; and
    d. approving the fees of the Monitor and its counsel, Cassels Brock & Blackwell LLP.

13. The justifications for the extension of the Stay Period and approval of the Third A&R DIP Agreement are detailed in the factums filed by Tacora and the Monitor. These circumstances for this relief now are equally compelling as they were in previous instances in this CCAA proceeding where the court has granted similar orders. See for example, *Tacora Resources Inc. (Re)*, 2024 ONSC 2454.

14. The extension of the Stay Period is necessary and appropriate in the circumstances to provide Tacora with sufficient time to close the Transactions. Third A&R DIP Agreement will best serve the interests of the Company's stakeholders as a whole by enhancing the prospects of a successful restructuring.

15. The fees and disbursements of the Monitor and its counsel for which approval is sought are supported by fee affidavits and accounts.  They were also the subject of cash flow forecasts and variances reported upon in the many reports of the Monitor that have been filed throughout these CCAA proceedings.  The amounts of these fees and disbursements of not insignificant, but this was a lengthy and often acrimonious process in which the Monitor and its counsel have provided and continue to provide the Applicant with invaluable assistance, culminating in the achievement of the Subscription Agreement and contemplated transactions that the court has now approved.
16. Counsel for other parties who appeared support the requested approval of the Monitor's activities and the fees and disbursements of the Monitor and its counsel.
17. The rates and fees charged by the Monitor and its counsel are consistent with the market rates for insolvency proceedings of similar complexity, are reasonable in the circumstances and validly incurred in accordance with the provisions of the ARIO.  They are approved.
18. The Approval and Reverse Vesting Order and the Stay Extension, DIP and Fee Approval Orders in the forms signed by me today shall have immediate effect.

*[signature: Kimmel J.]*

KIMMEL J.