# EXHIBIT K



ONTARIO SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

# COUNSEL/ENDORSEMENT SLIP

**COURT FILE NO.:** CV-23-00707394-00CL        **DATE:** 7

**NO. ON LIST:** 07 Oct 2024

**TITLE OF PROCEEDING:** IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF 16323715 CANADA INC.

**BEFORE:**    JUSTICE KIMMEL

### PARTICIPANT INFORMATION

**For Plaintiff, Applicant, Moving Party:**

| Name of Person Appearing | Name of Party | Contact Info |
| --- | --- | --- |
| Natasha Rambaran | Counsels for the Applicant, 16323715 CANADA INC. (and Tacora Resources Inc.) | nrambaran@stikeman.com |
| Lee Nicholson | | leenicholson@stikeman.com |

**For Other, Self-Represented:**

| Name of Person Appearing | Name of Party | Contact Info |
| --- | --- | --- |
| Alan Merskey | Counsels for the Monitor, FTI | amerskey@cassels.com |
| Joseph J. Bellissimo | | jbellissimo@cassels.com |
| Joe Thorne | Counsel for 1128349 BC Ltd | Joethorne@Stewartmckelvey.Com |
| Ben Muller | Counsel to Millstreet Capital Management LLC, OSP, LLC, Brigade Capital Management, LP and MSD Partners, LP | Bmuller@Osler.Com |
| Caroline Descours | Counsel to Cargill, Incorporated Cargill International Trading Pte Ltd. | Cdescours@Goodmans.Ca |
| Natasha MacParland | Counsel for Crossingbridge Advisors | Nmacparland@dwpv.com |
| Anisha Visvanatha | | avisvanatha@dwpv.com |
| Gerry Apostolatos | Quebec North Shore & Labrador Railway Inc. | gerry.apostolatos@langlois.ca |
| François J. Poirier | Revenu Québec | francois.poirier@revenuquebec.ca |

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Natasha MacParland | Counsel for Crossingbridge Advisors | Nmacparland@dwpv.com |
| Anisha Visvanatha | | avisvanatha@dwpv.com |
| Gerry Apostolatos | Quebec North Shore & Labrador Railway Inc. | gerry.apostolatos@langlois.ca |
| François J. Poirier | Revenu Québec | francois.poirier@revenuquebec.ca |

## **ENDORSEMENT OF JUSTICE KIMMEL:**

[1]  The Applicant (ResidualCo) seeks the CCAA Termination Order that includes relief to enable the Applicant and the Monitor (with expanded powers) to complete the remaining matters in these CCAA Proceedings in an efficient and cost-effective manner, and to bring these CCAA Proceedings to an orderly conclusion.

[2]  Capitalized terms not otherwise defined in this endorsement shall have the meanings ascribed to them in the Monitor's Twelfth Report dated October 1, 2024.

[3]  Tacora's extensive solicitation efforts prior to and during the CCAA Proceedings ultimately resulted in Tacora entering into the Subscription Agreement with the Investors, which was approved by this Court on July 26, 2024, pursuant to the Approval and Reverse Vesting Order.  The Transactions closed on September 19, 2024.

[4]  Upon filing the Monitor's Termination Certificate, the requested CCAA Termination Order provides that these CCAA Proceedings and the stay of proceedings will be terminated, and the Monitor will be released and discharged

[5]  The Monitor supports all of the relief requested on this motion.  No one on the service list has raised any concerns and no one appeared at the hearing to raise any objections.

Remaining Activities, Expanded Powers of the Monitor and CCAA Termination

[6]  The Applicant and the Monitor have identified the following remaining activities that are required to complete the CCAA Proceedings:

   a. certain necessary statutory and administrative steps for terminating the CCAA Proceedings, including finalizing dissolution of the ResidualCo's subsidiaries;

   b. bankrupting and administering ResidualCo; and

   c. returning to Tacora any unused portion of the Administrative Expense Reserve pursuant to the terms of the Approval and Reverse Vesting Order following completion of the remaining activities and the bankruptcy of ResidualCo.

[7]     Once these remaining activities have been completed, there will be no further need for these CCAA Proceedings as they will have achieved their purpose.

[8]     The requested expansion of the powers of the Monitor is required to enable the Monitor to assist with the remaining activities so that these CCAA Proceedings can completed and terminated.  The expanded powers will authorize the Monitor to exercise any powers (the "Expanded Powers") which may be properly exercised by any board of directors of ResidualCo, including, but not limited to, assigning ResidualCo into bankruptcy and acting as Bankruptcy Trustee in the ResidualCo Bankruptcy. The ResidualCo D&O will also be authorized to sign such documents and take such steps as are necessary to effectuate the efficient administration of the ResidualCo Bankruptcy.

[9]     Section 11 of the CCAA provides this Court with broad discretion to make "any order that it considers appropriate in the circumstances."   The discretion conferred by section 11 of the CCAA is appropriately exercised in this case in furtherance of the CCAA's remedial objectives, to grant the order requested for the termination of these CCAA Proceedings and discharge of the Monitor, and for additional relief to assist in the interim and subsequent periods surrounding the termination of the CCAA proceedings.  The exercise of the court's discretion in this case takes into account that:

   a. all matters requiring resolution within the ambit of the CCAA Proceedings will have been completed by the CCAA Termination Time;

   b. Tacora and the Applicant are acting in good faith and with due diligence; and

   c. the Monitor supports the termination of the CCAA Proceedings on the terms set out in the proposed CCAA Termination Order.

Stay Period Extension

[10]    The Court may grant an extension of the Stay Period under s. 11.02 (2-3) of the CCAA "for any period that the court considers necessary" where: (a) the applicant satisfies the court that circumstances exist that make the order appropriate; and (b) the applicant satisfies the court that it has acted, and is acting, in good faith and with due diligence. The extension of the Stay Period is necessary and appropriate in the circumstances to allow time for the Applicant and the Monitor to carry out the outstanding activities required to complete the CCAA Proceedings in an efficient manner.

[11]    The extension of the Stay Period to the CCAA Termination Time will also obviate the need for a further attendance before the Court and avoid the parties incurring unnecessary costs. The Monitor is supportive of the proposed extension of the Stay Period and does not believe that it will materially prejudice any stakeholders. Further, the Monitor expects that there will be

sufficient funds in the Administrative Expense Reserve to pay any expenses of the CCAA Proceedings up to the CCAA Termination Time.

[12]   I am satisfied that the Applicant has acted in good faith and with due diligence to complete the CCAA Proceedings and that the requested extension of the Stay Period is appropriate in the circumstances.

Additional Matters for Which Approval is Sought

[13]   In addition to extending the Stay Period and expanding the powers of the Monitor so it can assist with the completion of the remaining activities so that these CCAA Proceedings can be terminated, the requested CCAA Termination Order also seeks the court's approval of the fees and activities of the Monitor and its counsel, Additional Releases in favour of the Monitor Released Parties, the ResidualCo D&O and the Trustee and Notes Collateral Agent (collectively, the "Additional Released Parties"), and an extension of the Stay Period currently expiring today until and including the CCAA Termination Time.

[14]   The Additional Releases are confirmatory and akin to the releases granted by this Court in the Approval and Reverse Vesting Order. The release language is substantially the same. The Additional Releases are essentially filling in gaps in time and adding parties not covered by the original releases that this court has already considered and approved when the Approval and Reverse Vesting Order was granted.  See *Tacora Resources Inc. (Re)*, 2024 ONSC 4436, at paras. 17-26.  The same logic that was applied to the approval of the third party releases when the Approval and Reverse Vesting Order was signed apply equally here, for the reasons elaborated upon in the oral submissions of counsel for the Applicant and in the Applicant's factum filed on this motion (at paragraphs 17-21 and 44-49).  The same logic also applies to the carve out to preserve any claims that Crossingbridge may have against the Trustee and Notes Collateral Agent (Computershare).

[15]   The approval of the Additional Releases is granted having considered and been satisfied of the applicable factors identified in *Lydian International Limited (Re)*, 2020 ONSC 4006, at para. 54.  The Additional Releases are consistent with releases previously approved by this court in the Approval and Reverse Vesting Order, and they are reasonable and appropriate in the circumstances.

[16]   The requested approval of the activities of the Monitor described in its Twelfth Report is consistent with the policy and practice that is followed by this court in CCAA and other insolvency matters.  See *Target Canada Co (Re)*, 2015 ONSC 7574, at paras. 2 and 22.

[17]   The Monitor and its counsel have played, and continue to play, a significant role in the CCAA Proceedings and the activities of the Monitor as described in the Twelfth Report have been carried out in good faith, in a manner consistent with the provisions of the CCAA and in accordance with the provisions of the Orders issued in the CCAA Proceedings.

[18]    With respect to the fees of the Monitor and its counsel for which approval is sought, the guiding principle is whether the fees are fair, reasonable and proportionate given the value of the Applicant's assets and liabilities, as well as the complexity of the Applicant's business and the CCAA proceedings. The fees and disbursements of the Monitor and its counsel for which approval is sought are supported by fee affidavits and invoices for time and hourly rates that are well documented and they are fair, reasonable and appropriate, having regard, (a) the time spent; (b) their knowledge, experience and skill; (c) the responsibilities assumed; (d) the complications and difficulties encountered; (e) the results achieved; and (f) the cost of comparable services when performed in a prudent and economical manner. *See Bank of Nova Scotia v. Diemer*, 2014 ONCA 851, at paras. 33 and 45 and *Confectionately Yours Inc. (Re)*, 2002 CanLII 45059 (ONCA), at paras. 42-54.

[19]    The Administrative Expense Reserve was established in the Subscription Agreement, and approved in the Approval and Reverse Vesting Order, to fund against, among other things, any remaining fees and disbursements to be incurred by: (a) the Monitor and Cassels in these CCAA Proceedings; and (b) the Bankruptcy Trustee and its counsel in the ResidualCo Bankruptcy (collectively, the "Remaining Fees and Disbursements"). The Monitor anticipates that the remaining amounts held in the Administrative Expense Reserve will be sufficient to satisfy the Remaining Fees and Disbursements and any amounts remaining in the Administrative Expense Reserve will be returned to Tacora in accordance with the Approval and Reverse Vesting Order and the Subscription Agreement.

[20]    The payment of the Remaining Fees and Disbursements is appropriate in the circumstances. The use of the Administrative Expense Reserve for this purpose was previously approved in the Subscription Agreement and the Approval and Reverse Vesting Order and it will avoid the need for the parties to return for another court hearing and incur additional unnecessary costs related thereto.

Order

[21]    The revised form of CCAA Termination Order has been signed by me today and may be issued in the normal course.

[22]    Counsel and all parties are commended for their efforts prior to and throughout these CCAA Proceedings to bring them to a successful conclusion.

*[signature: Kimmel J.]*

KIMMEL J.