Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL



Court File No. CV-23-00707394-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE MADAM | ) | FRIDAY, THE 26TH |
| | ) | |
| JUSTICE KIMMEL | ) | DAY OF JULY, 2024 |

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF TACORA RESOURCES INC.

**(Applicant)**

### APPROVAL AND REVERSE VESTING ORDER

**THIS MOTION**, made by Tacora Resources Inc. (the "**Applicant**" or the "**Company**"), pursuant to the *Companies' Creditors Arrangement Act* (Canada) (the "**CCAA**") for an order, *inter alia*: (a) approving the subscription agreement entered into by and between the Applicant, as issuer, and the entities listed as investors on **Schedule "A"** hereto, as investors (the "**Investors**") dated July 21, 2024, (the "**Subscription Agreement**"), a copy of which was attached as Exhibit "A" to the Vuong Affidavit (as defined below) and the Transactions (as defined in the Subscription Agreement); (b) adding a new company to be formed ("**ResidualCo**") as an applicant to these proceedings (the "**CCAA Proceedings**"); (c) vesting out of the Applicant all Excluded Assets, Excluded Contracts, Excluded Liabilities and all Claims in respect of any Senior Priority Notes, Senior Secured Notes and the APF (other than those Claims under the APF satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) and discharging all Encumbrances against the Applicant, the New Common Shares, New Secured Priority Notes (as applicable), New Warrants, Unsecured Takeback Notes and the Retained Assets, except only the Permitted Encumbrances   (as defined in the Subscription Agreement); (d) authorizing and directing the Applicant to file the Articles of Reorganization; (e) terminating and cancelling all Existing Equity (other than the Existing Common Shares which will be cancelled in accordance with the Articles of Reorganization), as well as any Equity Documents (as defined below), for no consideration; (f) authorizing and directing the Applicant to issue (i) the Subscribed Shares to the Investors and the applicable New Common Shares to the Other New Equity Investors, as applicable, and vesting in the Investors and the Other New Equity Investors, as applicable (or as

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

any such Investor or Other New Equity Investor, as applicable, may direct, subject to the terms of the Subscription Agreement) all right, title and interest in and to the New Common Shares, (ii) the New Warrants and the Unsecured Takeback Notes to the Initial Noteholder Investors and the Other New Equity Investors, as applicable, that are, in each case, Existing Noteholders, and vesting in the Initial Noteholder Investors and the Other New Equity Investors, as applicable, that are, in each case, Existing Noteholders, (or as any such Initial Noteholder Investor or Other New Equity Investor, as applicable, may direct, subject to the terms of the Subscription Agreement) all right, title and interest in and to the New Warrants and the Unsecured Takeback Notes; (g) authorizing the Administrative Expense Reserve (as defined in the Subscription Agreement) pursuant to the Subscription Agreement; and (h) granting certain ancillary relief, was heard this day at 330 University Avenue, Toronto, Ontario;

**ON READING** the Motion Record of the Applicant, including the affidavit of Heng Vuong sworn July 21, 2024 (the "**Vuong Affidavit**") and the Exhibits thereto, the affidavit of Michael Nessim sworn July 19, 2024 (the "**Nessim Affidavit**") and the Exhibits thereto, the Eleventh Report (the "**Eleventh Report**") of FTI Consulting Canada Inc. ("**FTI**"), in its capacity as the Court-appointed monitor of the Applicant (the "**Monitor**"), and on being advised that the secured creditors who are likely to be affected by this Order herein were given notice;

**ON HEARING** the submissions of counsel for the Applicant, counsel for the Monitor, and counsel for Cargill, Incorporated and Cargill International Trading Pte. Ltd., counsel for Millstreet Capital Management LLC, OSP, LLC, Brigade Capital Management, LP and MSD, LP, and such other counsel and parties as listed on the Participant Information Form, with no one else appearing although duly served as appears from the affidavit of service of Philip Yang, filed

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINITIONS**

2.      **THIS COURT ORDERS** that, unless otherwise indicated or defined herein, capitalized terms used in this Order shall have the meanings given to them in the Subscription Agreement and the Amended and Restated Initial Order of the Honourable Madam Justice Kimmel dated October 30, 2023 (the "**Initial Order**"), as applicable.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

**APPROVAL AND VESTING**

3.      **THIS COURT ORDERS** that the Subscription Agreement and the Transactions are hereby approved and the execution of the Subscription Agreement by the Applicant is hereby authorized and approved, with such amendments as the Applicant and the Investors may deem necessary or otherwise agree to, with the approval of the Monitor. The Applicant is hereby authorized and directed to perform its obligations under the Subscription Agreement and to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transactions, including (a) the filing of the Articles of Reorganization, (b) the termination and cancellation of all Existing Equity (other than the Existing Common Shares which will be cancelled in accordance with the Articles of Reorganization) as well as any agreement, contract, plan, indenture, deed, certificate, subscription, rights, conversion rights, pre-emptive rights, options (including stock option or share purchase or equivalent plans), or other documents or instruments governing and/or having been created or granted in connection with the share capital of the Applicant, if any (other than the rights of the Investors under the Subscription Agreement, and the Other New Equity Investors, as applicable, under the Other New Equity Investor Subscription Agreements, as applicable) (the "**Equity Documents**") for no consideration, and (c) the issuance of (i) the Subscribed Shares to the Investors and the applicable New Common Shares to the Other New Equity Investors, as applicable; and (ii) the New Warrants and the Unsecured Takeback Notes to the Initial Noteholder Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable.

4.      **THIS COURT ORDERS** that notwithstanding any provision hereof, the closing of the Transactions shall be deemed to occur pursuant to the terms and in the manner, order and sequence set out in the Subscription Agreement, including in accordance with the Closing Sequence, with such alterations, changes or amendments as may be agreed to pursuant to the terms of the Subscription Agreement. Additionally, notwithstanding any provision hereof, (a) no fractional New Warrants will be issuable, with any entitlement to a fractional New Warrant for any Initial Noteholder Investor and the Other New Equity Investor that are, in each case, Existing Noteholders, as applicable, being round down to the nearest whole, and (b) Unsecured Takeback Notes will be issued in minimum denominations of US$1,000 principal amount, with no entitlement to any Unsecured Takeback Notes for less than US$1,000 principal amount.

5.      **THIS COURT ORDERS** that this Order shall constitute the only authorization required by the Applicant to proceed with the Transactions and that no shareholder or other approval shall be required in connection therewith.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL
.

6.    **THIS COURT ORDERS** that, at the time of the delivery of the Monitor's certificate (the "**Monitor's Certificate**") to counsel to the Applicant and counsel to the Investors as set out in the Subscription Agreement (the "**Effective Time**"), substantially in the form attached as **Schedule "B"** hereto, the following shall occur and shall be deemed to have occurred commencing at the Effective Time, all in accordance with the terms of the Subscription Agreement and in accordance with the Closing Sequence set out in the Subscription Agreement and the steps contemplated thereunder:

(a)    each Investor shall pay their respective unpaid balance of the New Equity Offering Initial Cash Consideration and New Equity Offering Retained Cash Consideration, each as set forth in Exhibit "A" to the Subscription Agreement (and which amounts will, for greater certainty, not include any amount of the Deposit and interest accrued thereon), to be held in escrow by the Monitor on behalf of the Investors and the entire Cash Consideration shall be dealt with in accordance with the Closing Sequence;

(b)    the Applicant shall be deemed to transfer to ResidualCo the Excluded Assets, the Excluded Contracts and the Excluded Liabilities;

(c)    Cargill shall set-off a portion of the amount owing by the Applicant under the APF (equal to the amount of the Cargill Pre-Filing Payable) against the Cargill Pre-filing Payable;

(d)    the Applicant shall be deemed to transfer to ResidualCo all Claims in respect of the Senior Secured Notes and the Senior Priority Notes and any Claims remaining under the APF, and the deemed transfer of the Senior Priority Notes and the Senior Secured Notes to ResidualCo will constitute a novation of such Senior Priority Notes and Senior Secured Notes to ResidualCo;

(e)    the Retained Assets will be retained by the Applicant, in each case free and clear of and from any and all debts, Liabilities, Actions, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or liquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise, including any and all encumbrances, security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or

119759888 v7

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Initial Order or any other Order of the Court; (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario), *Personal Property Security Act* (British Columbia), *Personal Property Security Act* (Newfoundland and Labrador), *Le Registre Des Droits Personnels Et Réels Mobiliers* (Quebec), the *Uniform Commercial Code* or any other personal property registry system or pursuant to the *Lands Title Act* (Newfoundland and Labrador) or the *Mining Act* (Newfoundland and Labrador), (all of which are collectively referred to as the "**Encumbrances**", which term shall not include the permitted encumbrances, easements and restrictive covenants listed on **Schedule "C"** hereto (the **"Permitted Encumbrances"**)) and, for greater certainty, all of the Encumbrances affecting or relating to the Retained Assets are hereby expunged and discharged as against the Retained Assets, provided that Retained Contracts will be retained by the Company subject only to those Claims of the counterparty to the applicable contract as agreed between the Investors, the Company, and the counterparty to the applicable contract;

(f)     all Existing Equity (other than the Existing Common Shares which will be cancelled in accordance with the Articles of Reorganization) as well as any agreement, Contract, plan, indenture, deed, certificate, subscription rights, conversion rights, pre-emptive rights, options (including stock option or share purchase or equivalent plans), or other documents or instruments governing and/or having been created or granted in connection with the share capital of the Applicant (other than any New Secured Priority Notes Offering Subscription Agreements, Other New Equity Subscription Agreements, as applicable, or rights of the Investors under the Subscription Agreement) shall be deemed terminated and cancelled for no consideration;

(g)     the following shall occur concurrently:

(i)     the Applicant shall issue the Subscribed Shares to the Investors and the Other New Equity Investors, as applicable, in accordance with the Subscription Agreement and the Other New Equity Subscription

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

Agreements, as applicable, and all of the right, title and interest in and to the New Common Shares issued by the Applicant to the Investors and the Other New Equity Investors, as applicable, in accordance with the Subscription Agreement and the Other New Equity Subscription Agreements, as applicable, shall vest absolutely in the Investors and the Other New Equity Investors, as applicable, free and clear of and from any and all Claims and, for greater certainty, all of the Encumbrances affecting or relating to the New Common Shares are hereby expunged and discharged as against the New Common Shares;

(ii) the Applicant shall issue the New Warrants and Unsecured Takeback Notes to the Initial Noteholder Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable, and all of the right, title and interest in and to the New Warrants and the Unsecured Takeback Notes issued by the Applicant to the Initial Noteholder Investors and the Other New Equity Investors, as applicable, that are, in each case, Existing Noteholders, shall vest absolutely in the Initial Noteholder Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable, free and clear of and from any and all Claims and, for greater certainty, all of the Encumbrances affecting or relating to the New Warrants and the Unsecured Takeback Notes are hereby expunged and discharged as against the New Warrants and the Unsecured Takeback Notes, and the Set-Off shall be effective;

(iii) the Monitor shall have been authorized and directed to release, and shall release, to the Applicant the New Equity Offering Retained Cash Consideration;

(iv) the Monitor shall be directed to pay, and shall pay, on behalf of the Applicant, (a) all advisors' expenses of the Applicant and the Monitor (including financial advisor and legal counsel fees) related to the CCAA Proceedings and the Transactions solely to the extent that such expenses are subject to CCAA Charges that rank ahead of the DIP Charge from the New Equity Offering Initial Cash Consideration and upon payment of all amounts owing under the Transaction Fee Charge, the Transaction Fee Charge shall be automatically released and terminated without any further

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice
**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

action; (b) to each Eligible Equity Investor, an amount no greater than US$650,000 as a reimbursement for advisors' fees and expenses incurred in connection with the Transactions by each applicable Eligible Equity Investors from the New Equity Offering Initial Cash Consideration, provided that each such Eligible Equity Investor has provided to the Monitor applicable invoices setting out in reasonable detail such professional fees and expenses; and (c) to the Investors, unless waived by the Investors, the Cost Reimbursement Amount, if incurred, from the New Equity Offering Initial Cash Consideration;

(v) the Monitor shall retain the Administrative Expense Reserve in a separate interest bearing account from the New Equity Offering Initial Cash Consideration to be dealt with in accordance with the Subscription Agreement; and

(vi) the Monitor shall be directed to pay, and shall pay, on behalf of the Applicant, all DIP Obligations accruing up to the Closing Date and the Existing Cargill Margin Facility, each in full and from the New Equity Offering Initial Cash Consideration and upon payment of such amounts all security in respect thereof shall be automatically and fully discharged, released and terminated without any further action;

(h) the Articles of Reorganization shall have been filed; and

(i) the Unanimous Shareholder Agreement shall be effective and any person receiving New Common Shares on the Closing Date will be deemed a party thereto.

7. **THIS COURT ORDERS** that the Monitor may rely on written notice from the Applicant and the Investors regarding the satisfaction or waiver of conditions to closing under the Subscription Agreement and shall have no liability with respect to delivery of the Monitor's Certificate.

8. **THIS COURT ORDERS** that the Monitor shall file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof in connection with the Transactions.

9. **THIS COURT ORDERS** that upon delivery of a copy of the Monitor's Certificate and a copy of this Order, together with any applicable registration fees, all governmental authorities and any other applicable registrar or government ministries or authorities exercising jurisdiction with

119759888 v7

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice    **Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

respect to the Applicant, the Retained Assets or the Excluded Assets (collectively, the "**Governmental Authorities**") are hereby authorized, requested and directed to accept delivery of a copy of the Monitor's Certificate and a copy of this Order as though they were originals and to register such transfers and interest authorizations as may be required to give effect to the terms of this Order and the Subscription Agreement. Presentment of this Order and the Monitor's Certificate shall be the sole and sufficient authority for the Governmental Authorities to make and register transfers of interest against any of the Retained Assets or Excluded Assets and the Monitor, the Applicant and the Investors are hereby specifically authorized to discharge the registrations on the Retained Assets and the Excluded Assets, as applicable.

10.     **THIS COURT ORDERS** that the Subscription Agreement and the Transactions shall constitute a "proposal" and this Order shall constitute a "reorganization", in each case for the purposes of Section 186 of the *Business Corporations Act* (Ontario).

11.     **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Applicant or the Monitor, as the case may be, is authorized, permitted and directed to, at the Effective Time, disclose to the Investors and Other New Equity Investors, as applicable, all human resources and payroll information in the Applicant's records pertaining to past and current employees of the Applicant. The Investors and Other New Equity Investors, as applicable, shall maintain and cause the Applicant, after Closing, to maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Applicant prior to Closing.

12.     **THIS COURT ORDERS** that, at the Effective Time and without limiting the provisions of paragraph 6 hereof, the Applicant and the Investors shall be deemed released from any and all claims, liabilities (direct, indirect, absolute or contingent) or obligations with respect to any Taxes (including penalties and interest thereon) of, or that relate to, the Applicant, including without limiting the generality of the foregoing all taxes that could be assessed against the Applicant, the Investors or the Other New Equity Investors, as applicable, (including its affiliates and any predecessor corporations) pursuant to section 160 of the *Income Tax Act* (Canada), or any provincial equivalent, in connection with the Applicant (provided that, as it relates to the Applicant, such release shall not apply to (a) the period from October 10, 2023 until Closing; (b) Tax liabilities (including transfer Taxes), if any, arising in connection with or as a result of the transfer of the Excluded Assets, Excluded Liabilities, Excluded Contracts, Senior Priority Notes and Senior Secured Notes to ResidualCo and the assumption of the Excluded Liabilities by ResidualCo, or

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice
**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

(c) Taxes in respect of the business and operations conducted by the Applicant after the Effective Time).

13.    **THIS COURT ORDERS** that except to the extent expressly contemplated by the Subscription Agreement, all Contracts (excluding the Excluded Contracts) to which the Applicant is a party upon delivery of the Monitor's Certificate will be and remain in full force and effect upon and following delivery of the Monitor's Certificate and no individual, firm, corporation, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

(a)    any event that occurred on or prior to the delivery of the Monitor's Certificate and is not continuing that would have entitled such Person to enforce those rights or remedies (including defaults or events of default arising as a result of the insolvency of the Applicant);

(b)    the insolvency of the Applicant or the fact that the Applicant sought or obtained relief under the CCAA;

(c)    any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations or other steps taken or effected pursuant to the Subscription Agreement, the Transactions or the provisions of this Order, or any other Order of the Court in these proceedings; or

(d)    any change of control of the Applicant arising from the implementation of the Subscription Agreement, the Transactions or the provisions of this Order.

14.    **THIS COURT ORDERS**, for greater certainty, that: (a) nothing in paragraph 13 hereof shall waive, compromise or discharge any obligations of the Applicant in respect of any Assumed Liabilities, and (b) the designation of any Claim as an Assumed Liability is without prejudice to the Applicant's right to dispute the existence, validity or quantum of any such Assumed Liability, and (c) nothing in this Order, the Subscription Agreement, the Other New Equity Subscription Agreements, as applicable, or the New Secured Priority Notes Offering Subscription Agreements, as applicable, shall affect or waive the Applicant's rights and defences, both legal and equitable,

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

with respect to any Assumed Liability, including, but not limited to, all rights with respect to entitlements to set-offs or recoupments against such Assumed Liability.

15.    **THIS COURT ORDERS** that from and after the Effective Time, all Persons shall be deemed to have waived any and all defaults of the Applicant then existing or previously committed by the Applicant, or caused by the Applicant, directly or indirectly, or non-compliance with any covenant, warranty, representation, undertaking, positive or negative pledge, term, provision, condition or obligation, expressed or implied, in any Retained Contract, existing between such Person and the Applicant arising directly or indirectly from the filing by the Applicant under the CCAA and the implementation of the Transactions, including without limitation any of the matters or events listed in paragraph 13 hereof, and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith under a Retained Contract shall be deemed to have been rescinded and of no further force or effect, provided that nothing herein shall be deemed to excuse the Applicant, the Investors, the Other New Equity Investors, as applicable, or the investors of New Secured Priority Notes, as applicable, from performing their respective obligations under the Subscription Agreement or be a waiver of defaults by the Applicant under the Subscription Agreement, Other New Equity Subscription Agreements, as applicable, or New Secured Priority Notes Offering Subscription Agreements, as applicable, and the related documents.

16.    **THIS COURT ORDERS** that from and after the Effective Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, derivatively or otherwise, and including without limitation, administrative hearings and orders, declarations and assessment, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Applicant or the Retained Assets relating in any way to or in respect of any Excluded Assets, Excluded Contracts, Excluded Liabilities or Claims in respect of any Senior Priority Notes, Senior Secured Notes and the APF (other than those Claims under the APF satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) and any other claims, obligations and other matters which are waived, released, expunged or discharged pursuant to this Order.

17.    **THIS COURT ORDERS** that, from and after the Effective Time:

(a)    the nature of the Assumed Liabilities retained by the Applicant, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Transactions or this Order;

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

(b)    the nature of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to ResidualCo;

(c)    any Person that prior to the completion of all steps in the Closing Sequence had a valid right or claim against the Applicant under or in respect of any Excluded Contract, Excluded Liability, Senior Priority Note, Senior Secured Note and APF (other than those Claims under the APF satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) (each an "**Excluded Liability Claim**") shall no longer have such right or claim against the Applicant but will have an equivalent Excluded Liability Claim against ResidualCo in respect of the Excluded Contract, Excluded Liability, Senior Priority Note, Senior Secured Note and APF (other than those Claims under the APF satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) from and after the completion of all steps in the Closing Sequence in its place and stead, and nothing in this Order limits, lessens or extinguishes the Excluded Liability Claim of any Person as against ResidualCo; and

(d)    the Excluded Liability Claim of any Person against ResidualCo following the completion of all steps in the Closing Sequence shall have the same rights, priority and entitlement as such Excluded Liability Claim had against the Applicant prior to the completion of all steps in the Closing Sequence.

18.    **THIS COURT ORDERS** that:

(a)    upon completion of all steps in the Closing Sequence, the Applicant shall cease to be an applicant in these CCAA Proceedings and the Applicant shall be deemed to be released from the purview of the Initial Order and all other Orders of this Court granted these CCAA Proceedings, save and except for this Order the provisions of which (as they relate to the Applicant) shall continue to apply in all respects;

(b)    as of the date of this Order, ResidualCo shall be a company to which the CCAA applies, and ResidualCo shall be added as an applicant in these CCAA Proceedings and all references in any Order of this Court in respect of these CCAA Proceedings to (i) an "*Applicant*" shall refer to and include ResidualCo, *mutatis mutandis*, (ii) "*Property*", as defined in the Initial Order, shall include the current and future assets, licenses, undertakings and properties of every nature and kind

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

whatsoever, and wherever situate including all proceeds thereof, of ResidualCo (collectively, the "**ResidualCo. Property**"), and, for greater certainty, each of the Charges (as defined in the Initial Order) shall constitute a charge on the ResidualCo. Property.

19.    **THIS COURT ORDERS** that for greater certainty, nothing in this Order, including the release of the Applicant from the purview of these CCAA Proceedings pursuant to paragraph 18(a) hereof and the addition of ResidualCo as an applicant in these CCAA Proceedings shall affect, vary, derogate from, limit or amend, and FTI shall continue to have the benefit of, any and all rights and approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the Initial Order, this Order, any other Orders in these CCAA Proceedings or otherwise, including all approvals, protections and stays of proceedings in favour of FTI in its capacity as Monitor, all of which are expressly continued and confirmed.

20.    **THIS COURT ORDERS** that, notwithstanding:

(a)    the pendency of these CCAA Proceedings;

(b)    any applications for a bankruptcy order now or hereafter issued pursuant to the BIA in respect of the Applicant or ResidualCo and any bankruptcy order issued pursuant to any such applications; and

(c)    any assignment in bankruptcy made in respect of the Applicant or ResidualCo;

the Subscription Agreement, the implementation of the Transactions (including without limitation the transfer and vesting of the Excluded Assets, Excluded Contracts, Excluded Liabilities and all Claims in respect of any Senior Priority Notes, Senior Secured Notes and APF (other than those Claims under the APF satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) in and to ResidualCo, and the issuance of (i) the New Common Shares to the Investors and the Other New Equity Investors, as applicable, (ii) the New Warrants and the Unsecured Takeback Notes to the Initial Noteholder Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable, (iii) any payments by the Investors and Other New Equity Investors, as applicable, authorized herein or pursuant to the Subscription Agreement and Other New Equity Subscription Agreements, as applicable, and (v) the terms of this Order, shall be binding on any trustee in bankruptcy that may be appointed in respect of the Applicant and/or ResidualCo, and shall not be void or voidable by creditors of the Applicant or ResidualCo, as applicable, nor shall they constitute nor be deemed to be a fraudulent preference,

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the CCAA, the BIA or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

**ADMINISTRATIVE EXPENSE RESERVE**

21.    **THIS COURT ORDERS** that on the Closing Date and in accordance with the Subscription Agreement, the Monitor shall establish the Administrative Expense Reserve by retaining a portion of the New Equity Offering Initial Cash Consideration, in such amount as determined pursuant to the Subscription Agreement, which the Monitor shall be authorized and directed to hold in a segregated interest-bearing account for the benefit of those entitled to be paid under the Administrative Expense Reserve and in accordance with the Subscription Agreement and this Order.

22.    **THIS COURT ORDERS** that the Monitor is authorized and directed to pay from the Administrative Expense Reserve, in the name of and on behalf of the Applicant prior to the Closing and on behalf of ResidualCo following the Closing:

(a)    the reasonable and documented fees and costs of (i) the professional advisors of the Applicant incurred up to the Closing; and (ii) the Monitor and its professional advisors and the professional advisors of ResidualCo, in each case for services performed prior to and after the Closing Date, in each case, relating directly or indirectly to the CCAA Proceedings or the Subscription Agreement, including without limitation, costs required to wind down and/or dissolve and/or bankrupt ResidualCo and costs and expenses required to administer the Excluded Assets, Excluded Contracts, Excluded Liabilities and ResidualCo;

(b)    amounts owing in respect of obligations secured by the CCAA Charges that rank ahead of the DIP Charge and are not paid or assumed on Closing; and

(c)    costs related to a premium for a run-off policy or the continuation of the Applicant's existing director and officer liability insurance policy in such amount and form, and on such terms, as agreed to by the Investors and the Applicant, each acting reasonably.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

23.     **THIS COURT ORDERS** that any amounts remaining in the Monitor's accounts after payment of all Administrative Expense Costs in accordance with the Subscription Agreement and this Order shall be paid by the Monitor to the Applicant.

**COST REIMBURSEMENT CHARGE**

24.     **THIS COURT ORDERS** that the Investors shall be entitled to the benefit of and are hereby granted a charge (the "**Cost Reimbursement Charge**") on the Property, which Cost Reimbursement Charge shall not exceed an aggregate amount of C$3,000,000, as security for the Company's obligation to reimburse the Investors in accordance with the terms of the Subscription Agreement. The Cost Reimbursement Charge shall have the priority set out in paragraphs 46 and 49 of the Initial Order.

25.     **THIS COURT ORDERS** that paragraph 46 of the Initial Order shall be deleted and replaced with the following:

"46.     **THIS COURT ORDERS** that the priorities of the Administration Charge, the Directors' Charge, the Transaction Fee Charge, the DIP Charge, and the Cost Reimbursement Charge (collectively, with the KERP Charge, the "**Charges**"), as among them, as against the Property other than the KERP Funds, shall be as follows:

*First* – the Administration Charge (to the maximum amount of US$1,000,000);

*Second* – the Directors' Charge (to the maximum amount of US$5,200,000);

*Third* – the Transaction Fee Charge (to the maximum amount of US$5,600,000);

*Fourth* – the DIP Charge; and

*Fifth* – the Cost Reimbursement Charge (to the maximum amount of C$3,000,000)."

**RELEASES**

26.     **THIS COURT ORDERS** that effective upon the delivery of the Monitor's Certificate to the Applicant and the Investors, (a) the Applicant and ResidualCo and their respective present and former directors, officers, employees, legal counsel and advisors, (b) the Monitor and its legal counsel, and their respective present and former directors, officers, partners, employees and advisors, (c) the Trustee and their respective present and former directors, officers, partners,

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

employees and advisors, and (d) the Investors and other parties to the Restructuring Support Agreement as set out in Schedule "A", their affiliates and their respective present and former directors, officers, employees, legal counsel and advisors, (the Persons listed in (a), (b), (c) and (d) being collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, investment proposal, dealing, or other fact, matter, occurrence or thing existing or taking place prior to the delivery of the Monitor's Certificate, or undertaken or completed in connection with or pursuant to the terms of this Order or these CCAA Proceedings, or arising in connection with or relating to the Subscription Agreement, the closing documents, the Applicant's assets, business or affairs, prior dealings with the Applicant, or any agreement, document, instrument, matter or transaction involving the Applicant arising in connection with or pursuant to any of the foregoing, and/or the consummation of the Transactions (collectively, the "**Released Claims**"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties; provided that nothing in this paragraph shall waive, discharge, release, cancel or bar (i) any claim for fraud or wilful misconduct, (ii) any claim against ResidualCo in respect of the Excluded Liabilities transferred pursuant to the Closing, (iii) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA, or (iv) any present or future claim of CrossingBridge Advisors, LLC, including any of its affiliates or agents, arising out of or relating to an intercreditor agreement dated January 9, 2023 (as amended or supplemented from time-to-time, the "**Initial Intercreditor Agreement**"), a collateral agency and intercreditor agreement dated as of May 11, 2023 (as amended or supplemented from time-to-time, the "**Second Intercreditor Agreement**" and, together with the Initial Intercreditor Agreement, the "**Intercreditor Agreement**"), (and any side letter, agreement, indenture or document existing prior to the CCAA filing date and relating directly to the Intercreditor Agreement), except for any such claim against the persons identified in part (a) or (b) of this paragraph 26.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

**THE MONITOR**

27.    **THIS COURT ORDERS** that the Monitor, its employees and representatives shall not be deemed directors of ResidualCo, *de facto* or otherwise, and shall incur no liability as a result of acting in accordance with this Order, other than any liability arising out of or in connection with the gross negligence or wilful misconduct of the Monitor.

28.    **THIS COURT ORDERS** that no action lies against the Monitor by reason of this Order or the performance of any act authorized by this Order, except by leave of the Court following a motion brought on not less than fifteen (15) days' notice to the Monitor and its legal counsel. The entities related or affiliated with the Monitor or belonging to the same group as the Monitor (including, without limitation, any agents, employees, legal counsel or other advisors retained or employed by the Monitor) shall benefit from the protection granted to the Monitor under the present paragraph.

29.    **THIS COURT ORDERS** that the Monitor shall not, as a result of this Order or any matter contemplated hereby: (a) be deemed to have taken part in the management or supervision of the management of the Applicant or ResidualCo, or to have taken or maintained possession or control of the business or property of any of the Applicant or ResidualCo, or any part thereof; or (b) be deemed to be in Possession (as defined in the Initial Order) of any property of the Applicant or ResidualCo within the meaning of any applicable Environmental Legislation (as defined in the Initial Order) or otherwise.

30.    **THIS COURT ORDERS** that, within ten (10) days of the Closing Date, the Monitor shall release the KERP Funds (as defined by the Initial Order) to the Applicant and the Applicant is authorized and directed to pay the KERP Funds, net of applicable withholdings and remittances payable, to the Key Employees (as defined by the Initial Order) which are entitled to receive such KERP Funds under the KERP (as defined by the Initial Order), as may be reallocated pursuant to the Order granted by this Court on July 5, 2024.

31.    **THIS COURT ORDERS** that nothing in this Order shall affect, vary, derogate from, limit or amend any rights, approvals and protections afforded to the Monitor in these CCAA Proceedings and FTI shall continue to have the benefit of any and all rights and approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the Initial Order, and any other Orders in these CCAA Proceedings or otherwise, including all approvals, protections and stays of proceedings in favour of FTI in its capacity as Monitor, all of which are expressly continued and confirmed.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**GENERAL**

32.     **THIS COURT ORDERS** that, following the Effective Time, the Investors and the Applicant shall be authorized to take all steps as may be necessary to effect the discharge of the Claims and Encumbrances as against the Applicant, the New Common Shares, Secured Priority Notes (as applicable), New Warrants, Unsecured Takeback Notes and the Retained Assets.

33.     **THIS COURT ORDERS** that, following the Effective Time, the title of these proceedings is hereby changed to:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF [●]

34.     **THIS COURT ORDERS** that, notwithstanding Rule 59.05, this Order is effective from the date that it is made and is enforceable without any need for entry and filing. In accordance with Rules 77.07(6) and 1.04, no formal order need to be entered and filed unless an appeal or a motion for leave to appeal is brought to an appellate court.

35.     **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada.

36.     **THIS COURT ORDERS** that the Applicant shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States or elsewhere, for orders which aid and complement this Order. All courts and administrative bodies of all such jurisdictions are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and the Monitor as may be deemed necessary or appropriate for that purpose.

37.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order.

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice
**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

38.     **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Prevailing Eastern Time on the date hereof, provided that the transaction steps set out in paragraph 6 hereof shall be deemed to have occurred sequentially, one after the other, in the order set out in paragraph 6 hereof.

Digitally signed
by Jessica Kimmel
Date: 2024.07.26
15:30:41 -04'00'

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

## SCHEDULE "A"

**Investors**

1. Millstreet Capital Management LLC, as investment manager on behalf of multiple noteholders

2. OSP, LLC (on behalf of certain managed funds).

3. Cargill, Incorporated

**Other Parties to the Restructuring Support Agreement**

1. Brigade Capital Management, LP

2. MSD Partners, LP

119759888 v7

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

## SCHEDULE "B" – FORM OF MONITOR'S CERTIFICATE

Court File No. CV-23-00707394-00CL

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF TACORA RESOURCES INC.

### MONITOR'S CERTIFICATE

## RECITALS

A.      Pursuant to an Initial Order of the Ontario Superior Court of Justice (the "**Court**") dated October 10, 2023 (the "**Initial Order**"), Tacora Resources Inc. (the "**Applicant**") was granted creditor-protection pursuant to the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C-36, as amended (the "**CCAA**") and FTI Consulting Canada Inc. was appointed as court-appointed monitor of the Applicant.

B.      Pursuant to an Order of the Court dated July 26, 2024 (the "**Approval and Reverse Vesting Order**"), the Court, *inter alia*, (i) approved the Subscription Agreement and the Transactions, (ii) vested out of the Applicant all Excluded Assets, Excluded Contracts, Excluded Liabilities and all Claims in respect of any Senior Priority Notes, Senior Secured Notes and the APF (other than those satisfied as contemplated pursuant to Section 7.2(c) of the Subscription Agreement) and discharged all Encumbrances against the Applicant, the New Common Shares, New Secured Priority Notes (as applicable), New Warrants, Unsecured Takeback Notes and the Retained Assets, except only the Permitted Encumbrances; (iii) authorized and directed the Applicant to file the Articles of Reorganization; (iv) terminated and cancelled all Existing Equity (other than the Existing Common Shares which were cancelled with the Articles of Reorganization), as well as any Equity Documents for no consideration; (v) authorized and directed the Applicant to issue the (A) Subscribed Shares to the Investors and Other New Equity Investors, as applicable (or as any such Investor or Other New Equity Investor, as applicable, may direct, subject to the terms of the Subscription Agreement); (B) the New Warrants and Unsecured Takeback Notes to the Initial Noteholder Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable, and vested in the Initial Noteholder

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

Investors and the Other New Equity Investors that are, in each case, Existing Noteholders, as applicable, (or as any such Existing Noteholder or Other New Equity Investor, as applicable, may direct, subject to the terms of the Subscription Agreement) all right, title and interest in and to the New Common Shares, New Secured Priority Notes (as applicable), New Warrants and Unsecured Takeback Notes, free and clear of any Encumbrances.

C.      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Approval and Reverse Vesting Order.

**THE MONITOR CERTIFIES** that:

1.      The Monitor has received the entire Cash Consideration;

2.      The Monitor has received written confirmation from each of the Investors and the Applicant, in form and substance satisfactory to the Monitor, that all conditions to closing under the Subscription Agreement have been satisfied or waived by the Investors or the Applicant, as applicable; and

3.      This Certificate was delivered by the Monitor at _____ **[TIME]** on _____ **[DATE]**.


**FTI Consulting Canada Inc., in its capacity as Monitor of Tacora Resources Inc., and not in its personal capacity**


Per:  _____

           Name:
           Title:

119759888 v7

Electronically issued / Délivré par voie électronique : 29-Jul-2024
Toronto Superior Court of Justice / Cour supérieure de justice

**Court File No./N° du dossier du greffe :** CV-23-00707394-00CL

## SCHEDULE "C" – PERMITTED ENCUMBRANCES

1. Reservations, limitations, proviso and conditions, if any, expressed in any original grant from the Crown provided that they do not materially adversely affect value, use or exploration or exploitation rights.

2. Title defects or irregularities which are of minor nature, encroachments, easements, rights-of-way, rights to use, servitudes or similar interests provided that same does not materially adversely affect value, use or exploration or exploitation rights.

3. Rights-of-way for or reservations or rights of others for, sewers, drains, water lines, gas lines, electric lines, railways, telegraph, telecommunications and telephone lines, or cable conduits, poles, wires and cables, and other similar utilities, or zoning by-laws, ordinances or other restrictions as to the use of the Company's real property, that arise in the ordinary course of business and which do not individually or in the aggregate materially adversely affect value, use or exploration or exploitation rights.

4. The Mineral Tenures.

5. Encumbrances permitted in writing by the Investors.

6. Encumbrances in respect of any Retained Contracts.

119759888 v7