

faegredrinker.com

**Tracey Salmon-Smith**
Partner
tracey.salmonsmith@faegredrinker.com
+1 212 248 3191 direct

Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036
+1 212 248 3140 main
+1 212 248 3141 fax

August 7, 2025

**VIA ECF**

Hon. Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York

Re: *CrossingBridge Advisors, LLC v. Cargill Int'l Trading Pte Ltd.*, No.: 24-cv-9138 (RA)

Dear Judge Abrams:

We represent Cargill International Trading Pte Ltd. ("CITPL") in the above-captioned case. Please accept this letter in response to Your Honor's August 5 Order seeking the parties' position on whether further briefing is needed with respect to the interpretation of the Subscription Agreement under Canadian law.

The short answer is that no further briefing is necessary. We respectfully maintain that this Court need not and should not undertake a "*de novo*" review under Canadian law of the Subscription Agreement. The Ontario Court already interpreted and approved the Subscription Agreement in connection with approving the Reverse Vesting Transaction and other restructuring transactions that were the focus of the proceedings there.

The Subscription Agreement is not simply a free-standing contract, but was a component of the orders and approvals issued by the Canadian Court that resulted in final approval of the Reverse Vesting Transaction, the implementation of the Reverse Vesting Transaction, and termination of the CCAA proceedings on October 7, 2024.[1] *See generally* TSS Decl., Ex. J, CCAA Termination Order, Dkt. No. 21-12; *id*., Ex. H, August Endorsement, Dkt. No. 21-10 (approving Subscription

---

[1] *See* Chubak Decl., Ex. 5, Approval and Reverse Vesting Order, dated July 26, 2024, Dkt. No. 27-5, ¶ 3 ("THIS COURT ORDERS that the Subscription Agreement and the Transactions are hereby approved and the execution of the Subscription Agreement by the Applicant is hereby authorized and approved, with such amendments as the Applicant and the Investors may deem necessary or otherwise agree to, with the approval of the Monitor."), ¶ 4 ("THIS COURT ORDERS that notwithstanding any provision hereof, the closing of the Transactions shall be deemed to occur pursuant to the terms and in the manner, *order and sequence set out in the Subscription Agreement, including in accordance with the Closing Sequence*, with such alterations, changes or amendments as may be agreed to pursuant to the terms of the Subscription Agreement.") (emphasis in italics added).

Agreement). Unlike a typical contract between two parties, the Subscription Agreement could not have been effectuated without Ontario Court approval. In this way, the Court's various approvals and orders analyzing and interpreting the Subscription Agreement are part of a comprehensive package with the Subscription Agreement itself. In other words, the Ontario Court's opinion about what the Subscription Agreement said and did is integral to what the Ontario Court itself *ordered,* and the two cannot be decoupled.

As we have argued, the Ontario Court was clear about the effect of the Subscription Agreement. Pre-petition debt was "eliminated." TSS Decl., Ex. H, ¶ 22 ("Ultimately, significant compromises were made by the secured creditors (whose pre-filing debt and annual debt service was eliminated in exchange for equity and future funding commitments by some), and by some unsecured creditors (Cargill in particular, whose offtake agreement is being replaced)."). The Court made required and detailed findings under Canadian law regarding the Reverse Vesting Transaction (of which the Subscription Agreement was the key document) pursuant to the Court's approval. *See id.* ¶ 3 (noting "the scrutiny that the court must apply to consideration of RVOs [reverse vesting orders] and third party releases"), ¶ 5 ("While RVOs remain the exception rather than the norm, I concluded that the requirements for approval of an RVO are met in this case.").

With regard to Your Honor's question as to "whether the closing sequence" is "considered in individual steps or as a whole, is that something I need to look to Canadian law for or not . . . whether I can look beyond the text itself[,]" Argument Tr. at 32:9-12, we respectfully submit that Your Honor need not look to Canadian law. The Ontario Court expressly considered and approved both the Reverse Vesting Transaction as a whole, *see* Chubak Decl., Ex. 5, Approval and Reverse Vesting Order, dated July 26, 2024, Dkt. No. 27-5, ¶ 3; TSS Decl., Ex. H, August Endorsement, Dkt. No. 21-12, and the individual steps pursuant to the Closing Sequence, *see* Chubak Decl., Ex. 5, Dkt. No. 27-5, ¶ 6. The Approval and Reverse Vesting Order expressly incorporates and approves the individual steps in the Closing Sequence. Accordingly, as the Ontario Court already expressly approved such matters, this Court need not apply Canadian law in that regard.

Furthermore, in its post-closing October 7, 2024 Termination Order, the Ontario Court "ORDER[ED] AND DECLAR[ED]" that that Monitor's comprehensive "Twelfth Report and the activities of the Monitor referred to therein are hereby ratified and approved[.]" TSS Decl., Ex J, ¶ 13. The Twelfth Report[2] of the court-appointed Monitor stated, consistent with the unambiguous language in the Subscription Agreement and CITPL's position in this case, "[t]he payment to Cargill of the amounts owing under the Existing Cargill Margin Facility are being made in consideration for Cargill entering into the Subscription Agreement[,]"[3] rather than on account of

---

[2] The Monitor's Twelfth Report, dated October 1, 2024 was cited in footnote 2 of Defendant's Reply Brief. *See* Dkt. No. 28, at 7 n.2. At 198 pages, CITPL did not attach the Twelfth Report as an exhibit to its Reply Brief but pointed the Court to the publicly available CCAA docket where it is available: https://cfcanada.fticonsulting.com/tacora/reports.htm.

[3] *See* Twelfth Report, Appendix D (Eleventh Monitor's Report, dated July 22, 2024), at 12 (contemplating potential amendment by stating "[t]he Purchasers may, in the alternative, determine that a payment in the same amount shall be made to Cargill not specifically in repayment of the Existing Cargill Margin Facility but otherwise as a payment to Cargill in connection with the Transactions and this Agreement"); *see* Twelfth Report ¶ 17 ("A more fulsome and detailed discussion of the Transactions is set out in the Eleventh Report" attached "as Appendix 'D.'").

2

pre-petition debt. No further briefing on Canadian law is required to determine the plain statements of the Ontario Court's orders.

Lastly, at the motion-to-dismiss stage, Plaintiff must allege a plausible legal theory of relief that takes into account the detailed contracts and orders in the Canadian insolvency proceeding, which are all subject to judicial notice. Plaintiff's First Amended Complaint ("FAC") falls well short of this standard, and it is not CITPL's burden at this point to anticipate and refute theories of interpretation and relief that are lacking in the FAC (or were never raised in the opposition brief). Accordingly, we maintain that dismissal of the FAC is appropriate here.

We appreciate the Court's attention to this matter.

                                            Respectfully submitted,

                                            */s/ Tracey Salmon-Smith*
                                            Tracey Salmon-Smith
                                            *Counsel for Defendant Cargill International Trading Pte Ltd.*

cc: Counsel of Record Via ECF