# AMINI LLC

**Jeffrey Chubak**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　212.497.8247
MEMBER NY & NJ BARS　　　　　　　　　　　　　　　　　　　　　jchubak@aminillc.com
August 7, 2025

**By ECF**

Hon. Ronnie Abrams
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: 24-cv-9138 CrossingBridge Advisors, LLC v. Cargill International Trading Pte Ltd.

Dear Judge Abrams:

This letter is submitted by plaintiff pursuant to the Order entered August 5, 2025 (ECF [#30](#)) to explain why additional briefing to address proper interpretation of the Subscription Agreement under Canadian law is warranted.

At the outset, with respect to general principles of interpretation under Canadian law, *Re Nelson Education Limited*, [2015 ONSC 5557](#) (CanLII) at ¶26 held "New York law regarding the interpretation of a contract would appear to be the same as our [Canadian] law."

We understand Your Honor's inquiry to driven partly because the definition of Shared Collateral[1] entails consideration of when Senior Priority Noteholders hold valid liens, and the Subscription Agreement includes a Closing Sequence under which certain transactions took place before and certain transactions took place after the "deemed … transfer to ResidualCo [of] all Claims [defined as payment obligations and liens] in respect of the … Senior Priority Notes", which "deemed transfer …. will constitute a novation of such Senior Priority Notes … to ResidualCo", pursuant to Subscription Agreement ([ECF #21-2](#)) § 7.2, and Reverse Vesting Order (ECF [#27-5](#)) ¶6 (similar).

Briefing is warranted as to whether this deemed transfer is solely for purposes of Tacora Resources Inc.'s CCAA proceeding, such that the Closing Sequence and other Subscription Agreement provisions have no effect on the instant intercreditor dispute to which the debtor is not a party. Determination of this issue would entail application of Canadian law to Subscription Agreement § 7.2.

---

[1] Defined in the Intercreditor Agreement as "at any time, Collateral in which the holders of any Series of Senior Priority Obligations and/or any Series of Pari Passu Obligations … hold a valid and perfected security interest at such time."

Hon. Ronnie Abrams
August 7, 2025
Page 2

As to this issue, as noted in the discussion of *Re Stelco Inc.*, 2005 CanLII 41379 (ONSC), *aff'd*, 2005 CanLII 42247 (ONCA),[2] within *Re Dynamic Technologies Group Inc.* (CCAA), 2023 ABKB 172 (ONCA), at ¶¶12-15, "[the purpose of the CCAA proceeding] is not to deal with disputes between a creditor of a company and a third party, even if the company was also involved in the matter of the dispute.  While issues between the debtor company and non-creditors are sometimes dealt with in CCAA proceedings, it is not a proper use of a CCAA proceeding to determine disputes between parties other than the debtor company."

The appellate court in *Stelco* noted that "the supervising judge was very careful to say that nothing in his reasons should be taken to determine or affect the relationship between the Subordinate Debenture Holders and the Senior Debt Holders".  The same is true here.  The Reverse Vesting Order limits the effect of the Subscription Agreement by providing in ¶17(b) that "the nature of the Excluded Liabilities,[3] including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to ResidualCo"; and also by carving CrossingBridge out of ¶26.

This is consistent with the step transaction doctrine recognized under New York case law, which collapses transactions in the context of evaluating the rights of third parties, such as taxing authorities and creditors.

Should Your Honor have questions concerning the foregoing, we would be happy to brief the matter further.

Respectfully submitted,

/s/ Jeffrey Chubak

cc: counsel of record

---

[2] *Stelco* held that even though two unsecured creditor groups were required to vote as a single class, the CCAA had no effect on the payment priority of one group (senior debt holders) over the other (subordinated debentures), pursuant to a trust indenture that provided that the senior debt holders would be paid in full first before the subordinated debenture holders were paid at all.  *Id*. ¶14 ("even though both groups were unsecured and should vote as a single class, the CCAA proceedings did not change the fact that one group was to be paid first").

[3] The Senior Priority Notes are defined as Excluded Liabilities in Schedule "F" of the Subscription Agreement, whose defined terms are incorporated under Reverse Vesting Order ¶2.